Merrimack
No. 84-012

THE STATE OF NEW HAMPSHIRE

v.

JOHN ALDEN SETTLE, JR.

April 20, 1984

*Gregory H. Smith*, attorney general (*Paul Barbadoro*, assistant attorney general, on the brief), by brief for the State.

*John Alden Settle, Jr.*, by brief, pro se.

BATCHELDER, J.   On October 24, 1983, the defendant was served with a subpoena, issued by the attorney general pursuant to RSA 311:7-b, I (Supp. 1981), requiring the defendant to appear before an assistant attorney general to testify concerning "unauthorized practice of law in the State of New Hampshire." The subpoena also instructed the defendant to produce "any documents prepared in whole or in part by John A. Settle, Jr. which have been filed on behalf of any party in any municipal, district or superior court in the State of New Hampshire."

The defendant appeared at the appointed time but refused to produce the documents described in the subpoena. On November 21, 1983, the attorney general filed an application to compel the defendant to comply. On December 9, 1983, after a hearing, the Superior Court (*Cann*, J.) granted the State's application, and the defendant then brought this appeal. We affirm.

The defendant alleges that the attorney general, without first filing a petition for injunctive relief, RSA 311:7-a (Supp. 1981), or providing the defendant with a written specification of the issues, RSA 311:7-b, VI (Supp. 1981), cannot begin an investigation into the unauthorized practice of law. We disagree.

■ RSA 311:7-a (Supp. 1981) empowers the attorney general to institute an action for injunctive relief against any individual engaged in the unauthorized practice of law. RSA 311:7-b, I (Supp. 1981) empowers the attorney general to investigate complaints of

any such practice and, during such investigation, to compel testimony and the production of documents. There is no language in RSA 311:7-a to :7-f (Supp. 1981) which requires or would suggest that the attorney general must petition the court for injunctive relief before he can investigate a complaint. Rather, a plain reading of these provisions would suggest that RSA 311:7-a and RSA 311:7-b are independent. Such a reading also effectuates the intent of the legislature in promulgating the statute.

■■ There exists, in New Hampshire, a strong public policy against the unauthorized practice of law. *Bilodeau v. Antal*, 123 N.H. 39, 43, 455 A.2d 1037, 1040 (1983). In order to strengthen enforcement of this policy, the legislature enacted RSA 311:7-a to :7-f (Supp. 1981), granting the attorney general broad investigative powers. *Id.*; N.H. JUDICIAL COUNCIL, ELEVENTH REPORT 32 (1966). Legislative intent would be frustrated if, before investigating a complaint, the attorney general was required to determine, from the face of the complaint, the merits of the case. Legislative intent, however, is furthered if the attorney general, upon receiving a complaint, is allowed to investigate it fully to determine if formal action is required.

■ Additionally, if the attorney general is required to file a petition before investigating, the statutory provision empowering the attorney general to compel testimony and the production of documents, RSA 311:7-b, I (Supp. 1983), becomes superfluous because the attorney general, after filing the petition, has the usual civil discovery techniques available to him. *See* RSA 498:1; RSA 517:1. This court construes statutory language to have some purpose and effect. *Kalloch v. Board of Trustees*, 116 N.H. 443, 445, 362 A.2d 201, 203 (1976).

■ Furthermore, the attorney general need not provide the defendant with a written specification of issues before starting an investigation. RSA 311:7-b, VI (Supp. 1981) requires that "[e]very person, whose conduct is investigated under this section shall be furnished with a written specification of the issues which are to be considered, and shall be given an opportunity to present evidence and be heard upon the specified issues."

This section requires the attorney general to provide an individual under investigation with an opportunity to be heard before judicial proceedings are commenced. In order to make such a hearing meaningful and to allow the individual an opportunity to rebut the charges against him, he must be given notice of what conduct allegedly constitutes his unauthorized practice of law. Such a hear-

ing can only be provided after the attorney general has focused the investigation and determined that the complaint against the individual has merit, and after the attorney general decides to proceed to the judicial stage.

The defendant, in refusing to produce the requested documents, asserted his fifth amendment right against self-incrimination. U.S. CONST. amends. V, XIV. He alleges that the documents might furnish the attorney general with evidence which might lead to his criminal prosecution under RSA 311:11 (Supp. 1981).

At the hearing on the application to compel, the State, in replying to the defendant's assertion of his fifth amendment right, stated:

> "[T]he State is seeking, if anything, at the conclusion of its investigation . . . only . . . injunctive relief. The only way Mr. Settle as a result of this investigation could be subject to criminal penalties would be if he defied a Court Order compelling him to respond to the subpoena."

■ We find that the State has represented to the court that it will not use the documents produced by the defendant, in compliance with this subpoena, in any further criminal proceedings. Thus, the defendant can comply with the subpoena knowing that the documents and the evidence derived therefrom are inadmissible against him in any later criminal proceedings. *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

■■ The defendant further filed a petition seeking a protective order for those documents prepared by him for licensed attorneys. The Superior Court (*Dunn*, J.) denied the petition. The work-product doctrine, upon which the defendant relies, protects "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). In this case, the attorney general has subpoenaed only documents which have been filed in court and not documents which reveal the private thought processes of an attorney. Any privilege which might have attached to these documents was waived when they were filed with the court and became public records. *See id.* at 239.

The defendant also alleges that the subpoena is overbroad and beyond the statutory authority of the attorney general. RSA 311:7-b, I (Supp. 1981) empowers the attorney general to investigate any complaint of the unauthorized practice of law. The only statutory definition of the unauthorized practice of law is provided in RSA 311:7 which states: "No person shall be permitted commonly to

practice as an attorney in court unless he has been admitted by the court. . . ." The defendant argues that unless an individual is actually practicing *in* court, his conduct is not proscribed by the statute.

■■ We cannot read RSA 311:7 to limit the unauthorized practice of law to those instances in which an individual has physically appeared in the courtroom to represent a litigant. At the very least, this provision also encompasses the filing of documents in the court system. In any event, since the subpoena, in this case, requires that the defendant produce only those documents which have been filed in a court, we hold that the subpoena is not overbroad. There is no "single factor to determine whether someone is engaged in the unauthorized practice of law . . . [Rather, such a] determination must be made on a case-by-case basis." *Bilodeau v. Antal*, 123 N.H. 39, 45, 455 A.2d 1037, 1041 (1983).

The remaining claims raised by the defendant may be raised as a defense in the proceeding for injunctive relief; however, they cannot provide a basis for the defendant's refusal to comply with the subpoena.

*Affirmed; remanded.*

All concurred.