Strafford
No. 84-381

THE STATE OF NEW HAMPSHIRE

v.

WILFRED DUKETTE

January 6, 1986

*Stephen E. Merrill*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*Bertram D. Astles*, of Derry, by brief and orally, for the defendant.

SOUTER, J. In *State v. Dukette*, 122 N.H. 336, 444 A.2d 547 (1982), this court affirmed the defendant's conviction for aggravated felonious sexual assault perpetrated by means of physical force. RSA 632-A:2, I (Supp. 1983). After we had denied the defendant's subsequent petition for writ of habeas corpus, *Dukette v. Perrin*, No. 82-531, the United States District Court for the District of New Hampshire vacated the conviction in the exercise of its own habeas corpus jurisdiction, based on the trial court's failure to instruct the jury on a lesser-included offense. *See Dukette v. Perrin*, 564 F. Supp. 1530 (D.N.H. 1983). After retrial in the superior court under the original indictment, the defendant was again convicted, and he again appeals.

He raises four issues: (a) that *Dunn*, J., erred in refusing to remove the public defender as trial counsel, despite the defendant's dissatisfaction; and that *Nadeau*, J., erred (b) in refusing to dismiss the indictment due to the State's destruction of evidence; (c) in refusing to order discovery into the circumstances of what the victim had described as an earlier, unreported rape; and (d) in denying a motion to set aside the guilty verdict for insufficiency of evidence. We affirm.

Because the defendant challenges the sufficiency of the evidence, we will begin by supplementing the statement of facts contained in the report of the first appeal. At each trial, the State's principal witness was the victim, who testified that the defendant grabbed her by the neck and forced her to walk to an area behind her apartment building, where he pushed her down an incline. There he maintained his grip on her throat as he removed her trousers and forcibly committed an act of penetration. The victim claimed that in the course of these acts the defendant pulled her hair, slapped her face, bit her breasts and genitalia, and spoke obscenities. She testified that she was eventually able to strike the defendant in the groin and then to escape by running away naked from the waist.

Her roommate testified that the victim's lower body was naked on her return to the apartment, and both the roommate and a police officer who soon came to investigate testified that the victim was agitated and frightened. The physician who later examined the victim noted, nevertheless, that she then appeared "quite calm." While he found "very little evidence of any trauma," he did observe an abrasion of the vulva that could have resulted from forceable intercourse, and he reported that the victim described her breasts and jaw as tender. The defendant and the State stipulated that medical tests revealed no sperm or seminal fluid on the victim.

The defendant testified on his own behalf. He stated that the victim had taken the keys to his motorcycle and that he had reacted by

pushing her against a wall, but he denied any other forceable act or sexual assault.

Turning to the assignments of error, we take up first the defendant's claim that his conviction is tainted by the trial court's abuse of discretion in declining to allow the public defender to withdraw as counsel. When the case was returned to the superior court, the defendant was still represented by counsel who had appeared for him at the first trial. When the defendant moved to appear pro se, the court permitted counsel to withdraw and granted a trial continuance. On the day next set for retrial, however, after the prosecution's witnesses had been brought in from outside the State, the defendant requested the appointment of new counsel and moved for a further continuance. The court then appointed the public defender.

While the defendant did not object to that appointment, he later insisted that the public defender allow one John Settle to participate in the preparation of the case. *See State v. Settle*, 123 N.H. 34, 455 A.2d 1031 (1983). Settle has been the subject of an inquiry by the Attorney General into the unauthorized practice of law, *see generally State v. Settle*, 124 N.H. 832, 480 A.2d 6 (1984); and he is presently appealing an order of the superior court enjoining him from engaging in unauthorized practice. *See State v. Settle* (No. 85-154).

The public defender refused to be associated with Settle. Because Settle had possession of the discovery material earlier provided to the defendant, however, the public defender was unable to prepare the case in time for the scheduled trial date. Faced with this dilemma, the public defender informed the court that the defendant wished the defender to withdraw for failure to cooperate with Settle. The defendant made no claim that the public defender did not represent him competently.

The court refused to allow the public defender to withdraw, agreed to continue the trial for a third time, and stated that the court would "get out an order with regard to Mr. Settle [that] will resolve that problem." The order referred to is not before us, and the only issue is whether the court should have allowed the defender to withdraw.

■ The court's action was proper under the general rule, which is no less applicable when the public defender is involved, that "a court can compel a defendant to go to trial with present counsel if the court determines, within its sound discretion, that the objections to counsel are dilatory tactics or otherwise unwarranted." *State v. Linsky*, 117 N.H. 866, 880, 379 A.2d 813, 822 (1977) (citing *Maynard v. Meachum*, 545 F.2d 273 (1st Cir. 1976); *Lofton v. Procunier*, 487 F.2d 434 (9th Cir. 1973)). The public defender was clearly war-

ranted in refusing to be associated with Settle, and the defendant's consequent dissatisfaction was just as clearly unwarranted.

■ Indeed, in this appeal the defendant's only argument in support of his contention that the court abused its discretion rests on a basis quite unrelated to the foregoing facts. The defendant now argues that he should have had an opportunity to retain private counsel of his choice, because he could be compelled to reimburse the State for the expense of his appointed counsel. *See* RSA 604-A:9 (Supp. 1983). The obvious response to this is that a right to counsel is not a right to endless engagement in dilatory tactics. Moreover, since the defendant did not present his current argument to the trial court at the pretrial hearing to which we have referred, he may not raise it for the first time here. *State v. Shannon*, 125 N.H. 653, 657, 484 A.2d 1164, 1168 (1984).

Next, we take up the defendant's claim that he was entitled to dismissal of the indictment because of the loss or destruction of evidence between the first and second trials. After this court's decision on the first appeal, on April 7, 1982, the evidence was returned to the State on June 15. At some time thereafter, but before the filing of the federal petition for habeas corpus, the State disposed of or destroyed some evidence. That evidence included the trousers that the victim was wearing on the night in question, which are the subject of the defendant's concern here.

The defendant claims that his retrial without the trousers as evidence denied him rights guaranteed by the sixth amendment of the Constitution of the United States, which we take to be a mistaken reference to the fifth and fourteenth amendments, and by part I, article 15 of the Constitution of New Hampshire. We assume that the defendant relies upon the due process guarantee in article 15 of the right to "produce all proofs that may be favorable to himself." As is our practice, we first consider the State claims independently, *see State v. Ball*, 124, N.H. 226, 231, 471 A.2d 347, 350 (1983); *see also Michigan v. Long*, 463 U.S 1032, 1040–41 (1983).

As an issue of State constitutional law, the claim that retrial without the lost evidence was a denial of due process presents a question of first impression. *Cf. State v. Woodman*, 125 N.H. 381, 480 A.2d 169 (1984) and *State v. Berry*, 124 N.H. 203, 470 A.2d 881 (1983) (right to due process is implicated when evidence in a criminal trial is destroyed). We do have the benefit, however, of extensive federal case law dealing with post-conviction requests for relief on the ground that the defendant had been deprived of relevant evidence at trial. In considering this body of law for its guidance in dealing with the State issue, we will observe the distinction between cases deal-

ing with evidence that was withheld, but is still in the government's control, and cases dealing with evidence that was lost or destroyed. *Compare Brady v. Maryland*, 373 U.S. 83 (1963) (evidence withheld), *and United States v. Agurs*, 427 U.S. 97 (1976) (evidence withheld), *with United States v. Augenblick*, 393 U.S. 348 (1969) (evidence lost); *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971) (evidence lost); *United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978) (evidence destroyed); *State v. Miskolczi*, 123 N.H. 626, 465 A.2d 919 (1983) (federal law applied where evidence destroyed).

All post-conviction access to evidence cases have dealt with, or alluded to, the need to assess the due process significance of such a deprivation by reference to the importance or materiality of the evidence as helpful or exculpatory to the defense, and by reference to the prejudice to the defendant resulting from the deprivation. *See, e.g., United States v. Agurs, supra* at 112–13; *United States v. Picariello, supra* at 227. In deriving an appropriate standard of importance or materiality, however, the federal case law dealing with lost or destroyed evidence has also emphasized the significance of the government's intention, or lack of intention, in parting with the evidentiary material. *Compare United States v. Augenblick, supra, and United States v. Bryant, supra, with United States v. Agurs, supra.*

When the government has demonstrated that it lost or destroyed evidence without apparent negligence and in good faith, a defendant seeking relief has been required to demonstrate a degree of evidentiary materiality and prejudice going beyond a mere possibility that the missing evidence could have affected the verdict. *See, e.g., United States v. Picariello supra; State v. Miskolczi supra; see also United States v. Bryant supra; cf. United States v. Heiden*, 508 F.2d 898 (9th Cir. 1974). As this court has previously interpreted the federal cases, in the absence of culpable negligence or bad faith, a defendant must demonstrate that the lost or destroyed evidence was material in the sense that its introduction would have raised a reasonable doubt as to guilt that did not otherwise exist. *State v. Miskolczi*, 123 N.H. at 629, 465 A.2d at 921; *State v. Breest*, 118 N.H. 416, 419–20, 387 A.2d 643, 645 (1978) (quoting *United States v. Agurs, supra* at 112–13 (1976)), *cert. denied*, 442 U.S. 931 (1979). The requisite demonstration of prejudice must rise to a corresponding level. *See United States v. Picariello, supra* at 228–29.

We find these federal cases persuasive in deriving standards of materiality and prejudice that should govern post-conviction enforcement of a defendant's State due process right to produce all favorable proofs. Where the State did not act with culpable negligence or bad faith in the loss or destruction of evidence within its

control, the only issue raised by such loss or destruction is the soundness of the verdict as a true reflection of guilt. This issue is reasonably addressed by asking whether the defendant has demonstrated that the missing evidence would have produced a different result and whether the lack of that evidence caused the defendant to suffer a verdict of guilty that would not have been obtained otherwise. Because, as we will explain, we are satisfied that this case presents neither bad faith, in the sense of an intent to prejudice the defendant, nor culpable neglect, we do not decide today whether standards of materiality and prejudice should be any different when the State's conduct is blameworthy in either sense. *See Mooney v. Holohan*, 294 U.S. 103 (1935); *United States v. Heiden supra; United States v. Bryant*, 439 F.2d at 642.

■ In applying this rule we take up first the questions whether the State acted in good faith and without culpable negligence. The State should have the burden of persuasion on these issues, *see United States v. Augenblick*, 393 U.S. at 355–56, at least until we have had occasion to determine whether bad faith or negligence should affect the requisite degrees of materiality and prejudice. In this case, the record indicates that the State satisfied its burden.

The most salient indication of good faith is the fact that the State had nothing to gain, and did have something to lose, by destroying the trousers. The State had introduced the trousers into evidence at the first trial, where the damaged zipper and the dirt and grass stains tended to corroborate the victim's story. While the absence of sperm and semen was exculpatory, those evidentiary facts were not lost with the trousers, because they could have been established through expert testimony at the second trial. (In fact, there was no such testimony, because the trial court granted the defendant's motion to exclude all testimony about the lost trousers. This was not prejudicial to the defendant, however, because the parties did stipulate before the jury that no sperm or seminal fluid was found on the victim's person.)

■ Moreover, the timing of the loss is consistent with good faith. The State did not lose or destroy the trousers until after the defendant had lost the direct appeal and the period for seeking rehearing had passed. While later events demonstrate that it would have been prudent to retain the evidence longer, as the State will presumably do in future cases, there is no indication that when the trousers were lost the State anticipated a retrial of the case. Indeed, it is undisputed that prior to the loss of the trousers the defendant made no demand for their preservation or further examination, which, if disregarded, might have indicated ill-motive or negligence in their

subsequent loss. We therefore conclude that the record supports the trial court's finding of good faith.

■ Although the trial court made no express finding on the issue of culpable negligence, the evidentiary record of what is known about the loss of evidence is sufficient to indicate that there was none. There is no evidence that after the affirmance of the conviction on the direct appeal, the police had any reason to believe that there would be a further trial or that the defendant would find a need for further inspection or evidentiary use of the trousers.

■ Having concluded that the State acted in good faith and without culpable neglect, we now must determine whether the evidence of the trousers was material, and its loss prejudical, when measured by the standard we announced above. The burden of persuasion on these issues may properly be placed on the defendant who challenges the verdict, at least in the absence of any blameworthy conduct by State officials. *See State v. Miskolczi*, 123 N.H. at 629, 465 A.2d at 921. The defendant has not carried these burdens.

The materiality of the trousers as exculpatory evidence derives from the laboratory finding that they were free of sperm or seminal fluid. It is, however, debatable that this evidentiary characteristic could satisfy the standard of materiality by raising a reasonable doubt of guilt that would not exist without it.

Even if we assume *arguendo* that the evidentiary value of the trousers would satisfy the materiality standard, however, it is clear that the loss of the trousers did not prejudice the defendant by resulting in a guilty verdict that would not otherwise have been returned. The assessment of prejudice in this case turns on a point we have noted before, that the loss of the trousers did not eliminate whatever exculpatory importance they may have had. Even without the trousers, the defendant could have presented testimony that no sperm or seminal fluid had been found upon them, and in any case the parties stipulated and the jury was instructed that none had been found upon the person of the victim. Since the known exculpatory value of the trousers was not lost, it is impossible to see how the destruction of the trousers could have affected the verdict unfavorably to the defendant.

The defendant nonetheless maintains that his inability to examine the trousers again before retrial prejudiced him by foreclosing the possibility of finding an evidentiary basis to make new exculpatory arguments: *e.g.*, that the defendant could not have removed the trousers as the victim testified, or that the dirt and grass stains were somehow inconsistent with the victim's story. These suggestions are, however, sheer speculation. They raise mere possibilities,

and as such they fail to indicate that further examination and evidentiary use of the trousers would have produced any chance of a different veridict.

We conclude that there was no prejudice and therefore no violation of due process under the State Constitution in retrying the defendant without the lost evidence. Because federal law is no more advantageous to the defendant, as many of our foregoing citations indicate, we similarly find no basis for relief under the Constitution of the United States. *See United States v. Picariello*, 568 F.2d at 227-28.

The third assignment of error challenges the trial court's denial of the defendant's request to order discovery of "information regarding a prior rape incident claimed by [the victim] to have occurred when she was fourteen years old and which she claims to have not reported . . . ." This request referred to the victim's statement to the examining physician that she had been the victim of such a rape but had not reported it.

In opposing the discovery request, the State argued that the prior incident had occurred seven years earlier and that the victim's response to it was immaterial to any issue raised by the present prosecution. Defense counsel responded in general terms, that the information sought would be relevant on the issues of the victim's "mental state" and her credibility. The court denied the request on alternative grounds, that the information sought was "not material and . . . in conflict with the Rape Shield Law." *See* RSA 632-A:6 (Supp. 1983).

The applicability of the rape shield law is open to doubt on these facts. In a prosecution for sexual assault, the rape shield law creates a qualified privilege against disclosure of "[p]rior consensual activity between the victim" and anyone other than the defendant. RSA 632-A:6 (Supp. 1983); *see State v. Miskell*, 122 N.H. 842, 451 A.2d 383 (1982). On the basis of the present record, we cannot determine the applicability of the shield law, because we do not know whether the supposed earlier "rape" was forceable or was consensual in fact but not in law. *See* RSA 632-A:2, X (Supp. 1983). If the earlier incident was forceable, the shield law would not apply. If the earlier incident was consensual in fact but not in law, the applicability of the shield law has never been directly decided. *But see State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981).

The doubt about the applicability of the shield law need not be resolved, however, for we are satisfied that the trial court was correct in finding that the information sought would have been

immaterial, in the sense that it would not have been reasonably calculated to lead to the discovery of evidence admissible in the trial of this case. *See* SUPER. CT. R. 35(b)(1). The only evidence relating to the alleged prior incident that would have had an adverse bearing on the victim's present credibility would have been evidence that there had been no prior rape, indicating that the victim had lied in telling the doctor that it had occurred. Since there had been no prior trial to establish the facts relating to the alleged incident, those facts could only have been proven by original litigation at the present trial. Admitting evidence to prove the facts about the earlier incident, however, would have created a trial within a trial, and would have shifted the focus of this case to the prior incident. Such evidence would have been collateral and, thus, inadmissible in the trial of this case. *See Little v. State*, 413 N.E.2d 639, 643 (Ind. App. 1980); E. MCCORMICK, EVIDENCE § 47 (3d ed. 1984). Since the requested discovery could have led, at best, to such inadmissible evidence, the trial court's refusal to order the discovery was not "prejudicial to the substantive rights of the defendant," *State v. Sorrell*, 120 N.H. 472, 475, 416 A.2d 1375, 1377 (1980), and consequently was a proper exercise of the court's discretionary authority over pre-trial discovery. *Id.*

 Finally, the defendant argues that there was insufficent evidence at trial to sustain a conviction. Such a claim can succeed only if no rational trier of fact could have found guilt beyond a reasonable doubt, considering the evidence in the light most favorable to the State. *State v. Holt*, 124 N.H. 645, 647, 474 A.2d 1031, 1033 (1984). A recollection of the victim's testimony as summarized at the beginning of this opinion indicates that the defendant's position on this point is patently frivolous. The issue merits no further comment.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.