### The State of New Hampshire

v.

### Michael A. Baillargeon

April 9, 1986

*Stephen E. Merrill*, attorney general (*Andrew L. Isaac*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.    The defendant, Michael Baillargeon, appeals his conviction for negligent homicide in connection with the death of his eight-month-old daughter, Christina. Prior to trial, the defendant

moved to dismiss the indictment against him, asserting due process violations under both the State and Federal Constitutions because of the loss or destruction by the State of certain exculpatory evidence. Whether the Trial Court (*Murphy*, J.) erred in denying this motion to dismiss is the only issue raised on appeal. We affirm.

At approximately 3:00 p.m. on March 3, 1981, Christina Baillargeon was brought to Androscoggin Valley Hospital in Berlin. She was treated briefly by an emergency room physician and then transferred to Mary Hitchcock Memorial Hospital in Hanover. At Mary Hitchcock Hospital Christina underwent a computerized axial tomography (CAT scan) to determine the existence and nature of any abnormalities within the skull. Based on the CAT scan, Dr. Anthony Merlis, a staff radiologist, determined that Christina had a "subarachnoid hemorrhage of undetermined etiology." Christina died at approximately 11:00 p.m. that night.

The following day Dr. John Dunn, a pathologist, performed an autopsy on Christina. Dr. Dunn concluded that the cause of death was swelling of the brain or "herniation" caused by subdural hemorrhage brought about by trauma. Due in part to the discovery during the autopsy of twenty-six bruises on the child's scalp, the Berlin police undertook further investigation into the circumstances surrounding Christina's death.

In April 1981, the defendant was indicted for second degree murder, RSA 630:1-b, I(b), and subsequently was found guilty after a jury trial. The defendant appealed to this court and, on December 29, 1983, we reversed his conviction, ruling that the trial court had erred in failing to suppress certain statements made by the defendant. *State v. Baillargeon*, 124 N.H. 355, 470 A.2d 915 (1983). We remanded the case to the superior court for a new trial. *Id.* On February 9, 1984, a new indictment was returned against the defendant, again charging him with second degree murder. Sometime between the conclusion of the first trial and the beginning of the second trial, a copy of the CAT scan was lost while in the possession of the State. Ordinarily another copy could have been printed; however the log book containing the access code needed to retrieve the CAT scan from the computer system was lost by the hospital. Prior to the second trial, the defendant moved to dismiss the February 9, 1984 indictment, alleging due process violations under the State and Federal Constitutions because of the State's failure to preserve the CAT scan for review by the defendant's medical expert.

In denying the defendant's motion to dismiss, the trial court found that although the CAT scan was material, and its loss prejudicial to the defendant, there was "[n]o credible evidence tending to show lack of good faith or the existence of gross negligence on the part of

the State." After a jury trial, the defendant was convicted of negligent homicide.

■ We consider first the defendant's claims under the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983); *see also Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). Where evidence in a criminal trial is lost or destroyed, the court must examine three factors in order to ascertain whether the defendant's due process rights have been violated: (1) whether the State acted in good faith when it lost or destroyed the evidence; (2) whether the evidence was material to the defendant's guilt or degree of punishment; and (3) whether the defendant was prejudiced by its loss or destruction. *State v. Dukette*, 127 N.H. 540, 506 A.2d 699 (1986).

■ The trial judge analyzed each of these factors and concluded that because there was no credible evidence tending to show lack of good faith on the part of the State, the indictment should not be dismissed. However, as we indicated in *Dukette supra*, a showing of good faith does not preclude a remedy for the defendant for loss or destruction of evidence. *Id.* at 547, 506 A.2d at 704; *see also United States v. Heiden*, 508 F.2d 898 (9th Cir. 1974).

■■ We agree with the trial court's finding that there was no credible evidence of gross negligence or lack of good faith on the part of the State. However, we disagree with the court's finding that the loss of the CAT scan was prejudicial to the defendant. The burden of demonstrating that the loss of evidence is prejudicial rests with the defendant. *Dukette, supra* at 546, 506 A.2d at 704. The defendant must establish that "the missing evidence would have produced a different result and . . . the lack of that evidence caused the defendant to suffer a verdict of guilty that would not have been obtained otherwise." *Id.*

The relevance of the CAT scan as potentially exculpatory evidence derives from Dr. Merlis's preliminary analysis of the CAT scan, and finding of a subarachnoid hemorrhage, which indicated that Christina may have died of natural causes. At trial, Dr. Merlis explained that his interpretation of the CAT scan was not inconsistent with the autopsy findings. A tissue-thin layer separates the two areas of the brain implicated. Because limitations of the CAT scan make it difficult to discern whether the hemorrhage is subarachnoid or subdural, the CAT scan did not rule out the possibility of subdural hematoma. Dr. Merlis accordingly relied on the autopsy results to reach the conclusion that Christina had a subdural hemorrhage and "came to an unnatural death."

Dr. Michael Baden, a forensic pathologist, testified that he would have reviewed the CAT scan had it been available. He stated that the evidence for subdural hemorrhage as the cause of death was not adequately documented in view of the inconsistency between Dr. Merlis's reading of the CAT scan and Dr. Dunn's post-autopsy conclusion. On the evidence before him, Dr. Baden could not, however, rule out either cause of death.

The defendant argues that the CAT scan was necessary to rule out the possibility that Christina died of natural causes; thus, the loss of this evidence was prejudicial. We disagree. Had the CAT scan been available, Dr. Baden would have provided only cumulative evidence on an argument already effectively presented by the defendant through Dr. Merlis's testimony; that the CAT scan indicated a sub-arachnoid, rather than a subdural, hemorrhage. Even without the CAT scan the defendant was able to present evidence at trial of the inconsistency between the CAT scan and autopsy results.

Moreover, it is mere speculation on the defendant's part to assert that Dr. Baden would have been able to rule out either cause of death if he had access to the CAT scan. Dr. Baden indicated that the CAT scan is of significant value in making a diagnosis. But, he stated that given the reliability of the CAT scan, Dr. Dunn should have made further investigations during the autopsy. He agreed that the CAT scan alone could not resolve the question of the cause of death. Thus, the evidence does not support the defendant's contention that the CAT scan would have been exculpatory.

■ Based on the cumulative and speculative nature of the possibly exculpatory evidence that could be derived from a reevaluation of the lost CAT scan, we conclude that the loss of this evidence could not have resulted in a guilty verdict that would not otherwise have been returned. *Dukette, supra* at 547, 506 A.2d at 705, The defendant has failed to prove that the loss of the evidence was prejudicial; therefore, we find no violation of his due process rights under the State Constitution. Because federal law provides no greater protection to the defendant, no violation of his due process rights under the United States Constitution has occurred. *Id.* at 548, 506 A.2d at 706 (citing *United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978)).

*Affirmed.*

All concurred.