# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0407, <u>State of New Hampshire v. Dennis D. Baillargeon</u>, the court on August 22, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The defendant, Dennis D. Baillargeon, appeals his conviction, following a bench trial in the Circuit Court (<u>Zaino</u>, J.), on charges of driving under the influence, possession of marijuana, failure to use a turn signal, and driving over the center line. He argues that the trial court erred by denying his request to continue the case and not dismissing the case based upon the State's failure to provide dashboard camera footage of the traffic stop that led to the charges. We affirm.

At the outset, we note that, in his appendix, the defendant has submitted several affidavits executed by him that postdate this appeal. Those documents were not before the trial court, and thus, are not part of the record on appeal. <u>See</u> <u>Flaherty v. Dixey</u>, 158 N.H. 385, 387 (2009). Accordingly, we will not consider them in deciding this appeal. <u>See id</u>.

The charges of which the defendant was found guilty arise from a January 15, 2015, traffic stop. On May 14, 2015, the defendant was defaulted, and the trial court entered dispositions on all charges based upon the default. Nearly four years later, on April 18, 2019, the trial court granted a motion to vacate the default. On September 16, 2020, however, the defendant was again defaulted for failing to attend a hearing, and dispositions on the pending charges were again entered. Those dispositions stood until April 28, 2021, when the trial court granted another motion to vacate the default. On August 24, 2021, the defendant once again failed to attend a case status hearing, and the trial court entered a third default and dispositions on the charges. Those dispositions stood until March 30, 2023, when the trial court vacated the default and held a trial management conference.

The case went to trial on June 22, 2023. At the start of trial, the defendant requested a continuance, asserting that he had not received discovery. When the trial court asked whether the defendant had requested discovery, the prosecutor responded that (1) at the March 30 trial management conference, the defendant had requested a copy of the police report; (2) the prosecutor told him at that time that he could pick the report up at the police department; (3) the defendant told the prosecutor shortly before the hearing

began that he "never found time to come and get" the report; and (4) the prosecutor had given him a copy of the report within "the past . . . hour." The defendant agreed that the prosecutor told him at the trial management conference that he could pick the report up at the police department and that he had not done so, claiming an inability to obtain transportation to the police department. The prosecutor further asserted that the arresting officer would be the State's only witness, and that other than a copy of the administrative license suspension form, which the defendant would have received at the time of his arrest, there was no other discovery to provide.

The trial court stated that it was not inclined to continue the case, but that it would take a recess to allow the defendant to review the police report, and that if the defendant required additional time to review the report after the recess, he could request it. Following a nineteen-minute recess, the trial court asked the defendant if he had had an opportunity to review the report, and he responded, "I'm on page 2, but I believe I've got enough to get going. It's basically to trigger my line of questioning." At that point, the trial proceeded with the arresting officer's testimony.

On cross-examination, the officer confirmed that at the time of the 2015 stop, the officer's cruiser was equipped with a dashboard camera that was operating. When the defendant then asked the officer if the officer had brought the video to trial, the prosecutor interjected, without objection, stating that in the years since 2015, the arresting officer's police department had transitioned from the dashboard camera system to a body camera system, and that due to the passage of time, "we don't have access to any of the old stuff anymore." During his own testimony, the defendant asserted that the cruiser video "was so important" because he "thought [he] did all the road tests," and that he "wish[ed] . . . we had [the cruiser video] because it deviates as to what happened from what's written." At no point, however, did the defendant seek dismissal or any other relief based upon the State's failure to provide the video footage of his stop, or otherwise argue that the State was obligated to preserve whatever footage the cruiser may have captured in 2015.

Following the defendant's testimony, the trial court asked the prosecutor when the prosecuting police department had switched from a dashboard camera system to a body camera system. The prosecutor responded that although he could not recall a precise date, it was around 2018 or 2019, "just before the outbreak of COVID." When the trial court asked whether the State had maintained "access to prior . . . videos for a period of time," the prosecutor explained that "we had about a couple of months . . . after the transition went through that there was access to . . . the prior server," but that "after a certain amount of time, that server was taken offline." Finally, the trial court asked whether the State had received any discovery requests prior to the March 30, 2023 trial management conference," to which the prosecutor replied, "Zero,

2

Your Honor." The trial court then asked the defendant whether there was anything he would "like to add about the discovery piece," specifically, about "the questions I was just asking the State," to which he replied, "Not really."

At that point, the trial court announced its ruling, finding the defendant guilty of four of the six charges brought against him. The court then explained that it had "spent some time also going through the history of the case because [it] wanted to give some thought to the arguments [the defendant had] made about discovery." After observing that the police department replaced its dashboard camera system prior to COVID and reviewing the defendant's lengthy history of default in the case, the trial court explained:

> To the extent I'm making a finding, it's that the State was not put on notice that that video contained possibly exculpatory evidence. The State, through no fault of its own, switched systems. That system required the removal of a server and programing that was used to be able to read the contents of that server, specifically any video evidence from the time. And since there was not a request to preserve and/or to turn over until the trial management conference —

The defendant interrupted the trial court, claiming that he did, in fact, contact the police station by telephone at some point requesting the dashboard video. The trial court responded by stating that "[t]he rules require that a request for discovery be made in writing," and that because the prosecutor was never put on notice of any request for video prior to it becoming unavailable, there was no discovery violation. This appeal followed.

On appeal, the defendant first argues that the trial court deprived him of due process by denying his request for a continuance due to the State's alleged discovery violations. The decision to grant or deny a continuance is within the sound discretion of the trial court. State v. Addison, 160 N.H. 792, 795 (2010). We will not overturn the trial court's decision unless it unsustainably exercised its discretion. Id. "There are no mechanical tests to determine when due process has been violated by the denial of a continuance, but in each case the totality of the circumstances must be considered." Id. (quotation omitted). "We consider the facts as they were presented to the court at the time of the ruling." Id.

In this case, we cannot conclude that the trial court unsustainably exercised its discretion by denying the request for a continuance based upon the State's failure to produce the police report prior to trial. The defendant conceded that the State told him the report was available at the police department when he requested it on March 30, 2023, but that he had not gone to the police department to obtain it. Moreover, the report was not lengthy, the

3

trial court provided the defendant a nineteen-minute recess in which to review it, and when subsequently asked if he had had a chance to review the report, the defendant responded that he believed he was ready "to get going." Finally, we emphasize that the defendant had been defaulted several times for failing to attend hearings in the eight-and-a-half years that had passed since his arrest. Under the totality of the circumstances, the decision to deny the continuance request was not so arbitrary as to violate due process. See id.

To the extent the defendant premises his argument that the trial court erred by denying his request for a continuance upon the State's failure to provide the dashboard camera video of his traffic stop, we note that the transcript does not reflect that he argued in the trial court that the failure to provide dashboard camera footage warranted a continuance. Accordingly, the argument is not preserved. See State v. Blackmer, 149 N.H. 47, 48 (2003) (stating that we generally will not review issues that were not raised at trial). Even if the defendant had raised the issue, however, we could not conclude that the trial court unsustainably exercised its discretion. The facts presented to the trial court, see Addison, 160 N.H. at 795, establish that the server on which footage of the defendant's traffic stop may have existed at some point in the past was taken offline, and was no longer available, several years prior to any request by the defendant for it.

We next address the defendant's argument that the trial court erred by not dismissing the case based upon the State's failure to provide dashboard camera footage of the traffic stop. We note that the defendant did not argue in the trial court, as he does on appeal, that the State's failure to provide the footage violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963) or State v. Laurie, 139 N.H. 325 (1995), and violated New Hampshire Rule of Criminal Procedure 12(a)(2)(B). Accordingly, the argument is not preserved. See Blackmer, 149 N.H. at 48. Even if the argument were preserved, however, we have noted a "distinction between cases dealing with evidence that was withheld, but is still in the government's control," to which Brady, Laurie, and their progeny apply, and "cases dealing with evidence that was lost or destroyed." State v. Dukette, 127 N.H. 540, 544-45 (1986); see Laurie, 139 N.H. at 329. Here, the evidence was not within the State's control and knowingly withheld; it was lost years before the defendant requested it.

Likewise, the defendant did not request dismissal of the charges on the basis that the State's loss or destruction of the video footage prior to his request for it violated his due process rights or the discovery rules, and thus, this argument is also not preserved. See Blackmer, 149 N.H. at 48. Even if the defendant had preserved the argument, however, in the absence of culpable negligence or bad faith on the part of the State with respect to the loss or destruction of the footage, it would have been the defendant's burden to establish that the footage "was material in the sense that its introduction

4

would have raised a reasonable doubt as to guilt that did not otherwise exist." <u>Dukette</u>, 127 N.H. at 545.  This is a "degree of evidentiary materiality and prejudice going beyond a mere possibility that the missing evidence could have affected the verdict."  <u>Id</u>.

Here, the trial court found that the prosecuting police department changed its dashboard camera system to a body camera system, thereby rendering the server on which footage of the 2015 traffic stop may have existed at one time unavailable years before the defendant put the State on notice of his request for it.  Indeed, the record establishes that because of the defendant's multiple defaults, the case was not even ready for trial until several years after any video footage of the stop would necessarily have been lost.  The potential loss of the footage by virtue of the system changeover was, according to the trial court, "through no fault" of the State.  We construe these findings, which the record supports, as an implicit determination that the State did not act in bad faith or with culpable neglect.  Nor has the defendant established, beyond speculation, that the footage was material and its loss prejudicial.  <u>See</u> <u>id</u>. at 547-48.

<u>Affirmed</u>.

MacDonald, C.J., and Bassett, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,
Clerk**