Merrimack
No. 5961

### State of New Hampshire v. Earl Dukette

September 28, 1973

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general *(Mr. Johnson* orally), for the State of New Hampshire.

*Wyman, Bean & Tefft (Mr. Arthur E. Bean, Jr.,* orally) for the defendant.

GRIFFITH, J. Defendant was convicted of the offense of statutory rape, allegedly committed on Mary Jane Seeley. Trial by jury was held before *Bownes,* J., who reserved and transferred defendant's exceptions. Prior to argument in this court the case was returned to the superior court for hearing on a motion for a new trial based upon newly discovered evidence and a claim that the prosecution suppressed evidence favorable to the accused. This motion was heard by *Flynn,* J., on April 7, 1972, who denied the motion for a new trial and transferred the defendant's exception. Counsel now representing the defendant did not represent him at the trial and the defendant has been on bail during these proceedings.

The evidence in the case disclosed a tangled web of relationship between the defendant, Mary Jane, and her mother, Agnes Seeley. It appeared that the defendant had entered into an extra-marital liaison with Agnes that began prior to the birth of Mary Jane and which persisted until shortly before he was charged with rape.

Agnes Seeley testified that the defendant was intimate with her for many years until shortly before his arrest for the offense charged here. Some time after Mary Jane was fourteen years old, the defendant had told her that he was her father and Agnes Seeley had always believed this to be so. Subsequent to defendant's telling Mary Jane he was her father, he took a greater interest in her personal life, taking her into his home where he lived with his wife and sons, in his car, and staying from time to time at the Seeley home.

Mary Jane testified that defendant told her he was her father and produced in court a number of affectionate notes from the defendant signed "Pa." Mary Jane testified that the defendant first had intercourse with her on the date alleged in the indictment and that he continued to have intercourse with her until some time after she became pregnant.

Agnes Seeley having learned of her daughter's pregnancy took her to a doctor. The defendant was named in a bastardy complaint and subsequently he was indicted for two counts of incest and statutory rape. As a result of blood tests which were taken of the defendant, Mary Jane, and Agnes, it was stipulated by the prosecution and defense counsel that the defendant could not be the father of Mary Jane, and therefore the incest indictments were nol-prossed. However, since blood tests of the defendant, Mary Jane, and her child, did not eliminate the defendant as a possible father, the bastardy complaint remained outstanding at the time of the trial.

The defendant took the stand and admitted his intimacy with Agnes Seeley but denied that he had ever had intercourse with Mary Jane. He agreed that he had referred to himself as her father, but he had done this with all the Seeley children because they were fatherless. He testified that he had finally decided to return to his wife and so informed Agnes Seeley. An argument ensued during which he told Agnes he would not marry her and she then became angry and said: "I have a pregnant daughter. How are you going to prove you are not the father?" The defendant testified that he retorted: "You might try a blood test." and then walked out the door.

All of the foregoing evidence including the nol-prossed incest indictments, the bastardy complaint and the results of all blood tests were introduced before the jury. Understandably, present counsel for the defendant urges us to rule some of this evidence irrelevant to the issue of defendant's guilt and prejudicial to his case. There must be a new trial in this case for reasons hereinafter set forth, but we are not disposed to rule on the specific exceptions to admission of evidence except to hold that in view of the way the defense was conducted all evidence was properly admitted in the trial, as held, even though in a different trial some of the evidence objected to might be well excluded. The defense

tactics at the trial may best be described as freewheeling. The result of this defense was to thrust matters upon the jury that were irrelevant and prejudicial and to make relevant evidence offered by the State in answer to the defense.

The denial of the motion for a new trial presents a more serious question. Defense counsel in preparation for trial took the deposition of both the complainant and her mother. In answer to questions directed at whether her first intercourse with the defendant occurred when she was fifteen or when she was sixteen, the complainant betrayed some confusion on dates. The deposition was used by defense counsel to attack the credibility of complainant's testimony that the offense occurred before she was sixteen.

In reviewing the file for the appeal to this court, the assistant attorney general in charge of the case found a written statement of the complainant dated prior to the indictment. After consultation with the attorney who had prosecuted the case and with his consent, he gave a copy of this statement to the then attorney for the defendant. This statement was the basis of defendant's motion for a new trial. At the hearing on this motion, counsel for the prosecution and defense at the trial both testified. The trial court found that the complainant's statement was withheld in good faith from defendant's counsel during and before trial, that it might possibly have been useful to the defense, but that it is not probable that a different verdict would be reached upon another trial. At no time did the trial defense counsel ever request production by the State of any statements given by the complainant.

The statement contained language that the defense now claims would have affected the verdict in that Mary Jane stated she did not bleed until a date after she was sixteen "when he [the defendant] finally succeeded."

Prosecuting counsel at the trial testified at the hearing on the motion for a new trial that he did not feel the statement was exculpatory since medical texts state that rupture of the hymen does not necessarily occur the first time that a girl has sexual intercourse, and there was no evidence that rupture of the hymen was the cause of her bleeding. Counsel further testified that he would have produced the statement, at any time, had it been requested by defense counsel. Defense

counsel, at the trial, testified that it never occurred to him that the prosecution had taken a statement from the complainant, and that, in his opinion, a different result would have easily occurred had he had the statement to use in cross-examination. The assistant attorney general, who had produced the statement, testified that, in his opinion, it possibly could have materially affected the outcome of the trial and could have been made use of by the defense.

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963). The defendant relies upon the rule laid down in the *Brady* case in a claim that the defendant was denied due process by the failure of the prosecution to furnish defendant's counsel with the complainant's statement.

While the *Brady* case appeared to make a request by the defense a prerequisite of the rule, subsequent cases have cast doubt on this as a requirement. *Moore v. Illinois*, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562 (1972), referred to a suppression by the prosecution after request, but the case did not turn on this issue. Previously in *Giles v. Maryland*, 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793 (1966), the Supreme Court had reversed a conviction in the absence of a request. We are of the opinion that " [e ]ssential fairness, rather than the ability of counsel to ferret out concealed information, underlies the duty to disclose." *People v. Moore*, 42 Ill. 2d 73, 90, 246 N.E.2d 299, 309 (1969 dissent of Schaefer, J.); *United States v. Wilkins*, 326 F.2d 135 (2d Cir. 1964); *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842 (4th Cir. 1964); *Levin v. Clark*, 408 F.2d 1209 (D.C. Cir. 1967); Comment, *Brady v. Maryland and the Prosecutor's Duty to Disclose*, 40 U. Chi. L. Rev. 112 (1972).

The test of the effect upon the defense of the withheld evidence is not, as argued by the State, that of the effect of newly discovered evidence in a motion for new trial. The defendant here does not have the burden of establishing that it is "at least probable that a different result will be

reached upon another trial." *State v. Nelson,* 105 N.H. 184, 193, 196 A.2d 52, 59 (1963). In that situation the defendant would be barred a new trial unless the trial court's finding that it was not probable that a different verdict would be reached upon another trial was clearly unreasonable.

The test where evidence favorable to the defense has been withheld, albeit in good faith, is not the above but rather whether the evidence "in any reasonable likelihood (could) have affected the judgment of the jury . . . ." *Giglio v. United States,* 405 U.S. 150, 154, 31 L. Ed. 2d 104, 108, 92 S. Ct. 763, 766 (1972), citing *Napue v. Illinois,* 360 U.S. 264, 271, 3 L. Ed. 2d 1217, 1222, 79 S. Ct. 1173, 1178 (1959). In the present case the statement was a clear basis for attacking the credibility of the witness, upon whom the prosecution rested, on the crucial question of whether intercourse occurred when complainant was fifteen, when it was rape, or when she was sixteen, when it was not. The assistant attorney general disagreed with the county attorney as to its value and usefulness to the defense. The statement may have been interpreted as the prosecutor contended in his testimony, but the jury might well have considered it a clear statement by the witness made to the prosecution that intercourse did not occur until after she was sixteen. "When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful." *Griffin v. United States,* 183 F.2d 990, 993 (D.C. Cir. 1950); *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d at 845; *Sims v. Cupp,* 354 F. Supp. 698 (D. Ore. 1972).

We do not consider that this would have been merely cumulative in attacking the credibility of the witness since her confusion on dates in her deposition might well have been thought by the jury to be the result of badgering by defense counsel. Accordingly, we sustain the exception of the defendant to the refusal of the trial court to set the verdict aside because of the evidence withheld from the defendant. *Giglio v. United States,* 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972); *Giles v. Maryland,* 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793 (1966).

478

*Defendant's exceptions sustained in part; new trial; remanded.*

All concurred.