Merrimack
No. 78-013

THE STATE OF NEW HAMPSHIRE

v.

ROBERT BREEST

May 31, 1978

*David H. Souter*, attorney general (*Richard B. Michaud*, attorney, orally), for the State.

*Holland & Aivalikles*, of Nashua (*Francis G. Holland* orally), for the defendant.

BOIS, J.    Appeal from the denial of a motion for a new trial. After an evidentiary hearing, the defendant excepted to the findings and rulings of the trial court. All questions of law raised were reserved and transferred by *Keller*, C.J. We affirm.

This court has previously upheld the 1973 jury-trial conviction of the defendant for murder in the first degree. *State v. Breest*, 116 N.H. 734, 367 A.2d 1320 (1976). On October 3, 1976, the defendant filed a motion for a new trial based on the failure of the State, at the trial, to disclose to the defendant the results of a test of paint chips allegedly performed by an expert for the State. On September 19, 1977, the parties agreed that this motion would be held in abeyance and temporarily resolved by permitting the defendant to depose the expert. The court so ordered.

On October 21, 1976, the defendant filed a motion seeking to depose Sheriff Ronald D. Daniels, Jr., about alleged promises made by the State to David Carita, to induce the witness' testimony at the trial. At a hearing held on September 19, 1977, Sheriff Daniels, called as a witness for the defendant, testified about promises or arrangements made to assure Carita's safety. The motion to take his deposition was waived.

Counsel were permitted to file memoranda, and the court found that "[e]ach memorandum pertains primarily to the defendant's claim that he is entitled to a new trial since the State did not disclose, prior to, or during the trial, certain promises the State had made to Carita to give him a new name after the trial, and the defendant's claim that Carita committed perjury at the trial, to the knowledge of the State, with reference to his testimony as to what promises the State had made to him to induce him to testify." Although this claim was never formally expressed in a pleading, the court construed it as an additional claim under the October 3, 1976, motion for a new trial.

The question presented for our review, phrased by the defendant, is as follows: "Whether since the State failed to disclose special promises made to its key witness in order to induce testimony against the defendant, including promises of a fully documented new name and identity in order to protect the witness from death at the hands of organized crime, due process is violated and judgment must be reversed and a new trial ordered."

Defendant Breest's first contention is that the State violated a specific order of the trial court in failing to provide defense counsel with "any and all evidence at all favorable to the defendant." At least one court has held that the suppression of one of an accomplice's

several statements, that corroborated a defendant's version of the events surrounding a murder, deprives the defendant of due process. The court so holding noted specifically that the statement had been requested, that it was "material," and that it might have affected the outcome of the trial. *Brady v. Maryland*, 373 U.S. 83 (1963). In the present case, however, specific information was not requested by the defendant and withheld by the prosecutor, but rather a request was made for "any and all exculpatory evidence."

The trial court found that the State did not disclose to the defendant that it had promised the witness, as an inducement to elicit his testimony, that it would furnish him a new name after the trial; that the State did not violate the court order which did not specifically require a disclosure of promises made to witnesses, such as Carita, although it did require disclosure of evidence favorable to the defendant; and that essential fairness did not require disclosure of the promise to give a new name. There is no finding of improper motive on the part of either the witness or the State. An examination of the record does not reveal error, and we hold that the record amply supports the findings entered by the court.

A prosecutor will not be held to have violated his constitutional duty of disclosure unless his omission results in the denial of the defendant's right to a fair trial under the due process clause of the fifth amendment to the United States Constitution. *United States v. Agurs*, 427 U.S. 97 (1976); *see* N.H. CONST. pt. 1, art. 15. The Federal Constitution does not demand that everything that might influence a jury be disclosed, or that there be permitted a complete discovery of all investigatory work or an examination of the State's complete file. *Moore v. Illinois*, 408 U.S. 786 (1972). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. at 109–10.

Not every nondisclosure is necessarily error, and a conviction need not be set aside unless a nondisclosure had an influence on the jury. *Kotteakos v. United States*, 328 U.S. 750 (1940); *State v. Dukette*, 113 N.H. 472, 309 A.2d 886 (1973); *State v. Lemire*, 115 N.H. 526, 345 A.2d 906 (1975). Materiality therefore is the key to the problem. The test to be applied is expressed in *United States v. Agurs*, 427 U.S. at 112–13, as follows:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of a relatively minor importance might be sufficient to create a reasonable doubt. (Footnotes omitted.)

Applying the above standard of materiality to the instant case we find no reason to reverse the conviction. The "key" witness involved herein was not an accomplice or codefendant. He was a fellow prisoner to whom the defendant allegedly made damaging admissions of guilt. Unlike the majority of the cases reviewed above, the promises by the State in the present proceeding were not promises not to seek an indictment, to forbear from prosecution, to mitigate the sentence, or to render other such aid. *See United States v. Bynum*, No. 77-1052 (1st Cir. January 6, 1978). What was assured the witness was his personal safety from individuals not even remotely connected with the defendant Breest. (The witness feared that trial publicity would reveal his whereabouts to persons he claimed were out to harm him.)

Defendant's second contention is that the witness committed perjury in falsely testifying about promises or inducements, that the State knew or should have known the testimony was false, and that the State should have brought that fact to the attention of the court. We find no merit in this argument. The record supports the trial court's finding that: "Considering Carita's testimony as a whole, it is found that he did not commit perjury in his testimony as to what promises or assurances the State had made to him relative to his safety." The transcript reveals that Carita did in fact testify that "the State had assured him of his safety in order to induce him to testify, and, in particular that he had been assured that he would stay in New Hampshire, that he would not be thrown in any old prison, and that New Hampshire has a work release program." The witness further testified that he remained in custody similar to that which he

had been subject to in Massachusetts, and that he was not up for parole until his original eligibility date. The only benefit Carita obtained from the promises was the continued status he had before he testified in the instant case. In light of the voluminous testimony about the negotiations for the witness' appearance, and the opportunity for cross-examination of the witness, and the actual cross-examination in which defendant engaged, we must agree with the trial court.

The final argument deals with defendant's claim that his lack of knowledge of evidence of promises and inducements impaired his ability to fully and fairly cross-examine and impeach either the credibility or the motives of the witness. He alleges that this clearly could have affected the jury's assessment of the proferred testimony.

■ ■ The principle that a conviction obtained through the use of false evidence, known to be such, must fail "does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A new trial is required "whenever nondisclosure might have affected the jury's assessment of credibility." *United States v. Butler*, 567 F.2d 885, 891 (9th C.A. 1978). This repeats the test laid down in *Giglio v. United States*, 405 U.S. 150, 154 (1972): "A new trial is required 'if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . .' " The trial court was aware of the law and the applicable test when, in citing *Dukette* and *Lemire*, it found that: "There is no reasonable likelihood that the introduction of evidence, at the trial, relative to the State's promise to give the defendant a new name, could have affected the judgment of the jury as to Carita's credibility, or the judgment of the jury relative to the guilt or innocence of the defendant. . . ." A review of the witness' lengthy testimony and cross-examination convinces us that had the promise in question been revealed, Carita's credibility would not likely have been destroyed, for he was a witness who had already been shown to have been a convicted criminal and anything but a pillar of society. On these facts we hold that the jury could not have been misled as to the character or credibility of the witness. *See United States v. Bynum*, no. 77-1052 (1st Cir. January 6, 1978).

Because after considering the entire record the trial court properly remained convinced of the defendant's guilt beyond a reasonable doubt, we hold that the court's denial of the motion for a new trial,

based on the grounds herein discussed, did not deprive the defendant of a fair trial.

*Exceptions overruled.*

All concurred.