Merrimack
No. 88-098

THE STATE OF NEW HAMPSHIRE

v.

GEORGE D. DERY

July 3, 1991

*John P. Arnold,* attorney general (*Tina L. Nadeau,* attorney, on the brief, and *Peter Beeson,* senior assistant attorney general, orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.  The defendant was convicted after a jury trial in Superior Court (*Hollman,* J.) of five counts of negligent homicide in consequence of operating a vehicle under the influence of intoxicating liquor, RSA 630:3, I(b) (currently codified as RSA 630:3, II (Supp. 1990)), and five counts of negligent homicide based on negligence in the operation of an unsafe vehicle at an unreasonable speed, RSA 630:3, I(a) (currently codified as RSA 630:3, I (Supp. 1990)). He was sentenced only on the latter counts. The defendant appeals, alleging first that he was denied due process of law when the prosecution failed to provide, in discovery, exculpatory evidence consisting of the arrest and conviction record of a witness. The defendant alleges, further, that the trial court's denial of his motion to dismiss the second set of indictments, charging him with negligent homicide based on an unsafe vehicle and unreasonable speed, violated his right to a speedy indictment. We affirm.

The facts elicited at trial were as follows. On October 16, 1983, the defendant was involved in an automobile accident in Epsom in which five people died. The defendant was driving a car he had bought from his friend, David Letourneau, four days earlier. At the time of the purchase, the car needed tires, had a loud exhaust, and was missing a bolt at the front end stabilizer chassis bushing. The defendant was warned by his housemate that it would be dangerous to drive the car in its present condition and was advised to take it to a garage. He obtained a temporary plate by stating that he believed the car met safety requirements.

Letourneau and the defendant met at the defendant's residence around noon on the day of the accident, where they drank some beer together. They then went to a third person's residence, where the

defendant did a "shot" of tequila, but vomited immediately. All three people then picked up a case of beer on the way to a fourth person's residence, where they stayed from about 2:00 p.m. until 6:00 p.m., when the four left to go to a store for more beer. The accident occurred while en route to the store. While driving north on Route 28, the defendant allowed his car to drift to the right over the fog line several times. He then accelerated rapidly, swerved across the double yellow line and collided with another car traveling south. Three occupants of the southbound car and two occupants of the defendant's car were killed as a result of the crash.

Minutes after the crash, an emergency medical technician (EMT) arrived on the scene and checked the defendant's respiratory functions. The EMT could detect the smell of alcohol coming from the defendant's mouth. A second EMT transported the defendant to the hospital and, during the twenty-minute ride, detected a strong odor of alcohol on the defendant's breath. After having conversed with the defendant, she concluded that his ability to operate a motor vehicle was "definitely impaired." A lab technician for the hospital trauma team who attended the defendant in the emergency room testified that the defendant appeared heavily influenced by alcohol. The defendant was arrested at the hospital by a State trooper, who spoke with the defendant about the accident and detected alcohol on the defendant's breath. The defendant acknowledged drinking "[j]ust a few beers" and having bald tires.

On October 20, 1983, four days after his arrest, the defendant was indicted by a Merrimack County Grand Jury on five counts of negligent operation of his vehicle while under the influence of intoxicating liquor, consequently causing the deaths of the five victims. A suppression issue was decided on an interlocutory transfer to this court, see State v. Dery, 126 N.H. 747, 496 A.2d 357 (1985), and the defendant was thereafter tried before a jury in December of 1985. Prior to trial, the defendant moved to exclude any expert testimony on whether his car was in poor condition, and his motion was granted. When the jury was unable to reach a unanimous verdict, a mistrial was declared.

Immediately thereafter, the Merrimack County Attorney sought and obtained five additional indictments for negligent homicide, alleging that the defendant caused the deaths by operating his car in an unsafe condition and at an unreasonable speed. The defendant was tried again in January of 1988 on all ten indictments.

Letourneau, who was the only survivor of the collision other than the defendant, testified at trial that the defendant was walking and

talking appropriately and was definitely not drunk at the time of the accident. Letourneau was not certain how much the defendant drank that day, but imagined that the defendant "was impaired a little bit because he had been drinking."

At the time of the accident, the defendant's car had two bald tires, and a third one was nearly bald. The right front tire was a steel-belted radial, and the other three were bias-ply tires (non-belted, non-radial). A front-end tie rod/sway bar was in place, but not properly fastened. The caster shims which are necessary to align a front end were missing, and spring spacers had been inserted into the front end suspension to correct for failing springs.

The prosecution's expert in accident reconstruction testified at trial that, from marks left by the defendant's car at the accident scene, he calculated that the defendant was driving the car between 72 mph and 82 mph. The posted speed limit was 55 mph. He further testified that, in his opinion, the accident was caused by excessive speed and alcohol. Assuming alcohol was not a factor, his hypothetical opinion was that the defendant's steering reactions were too slow for the speed of travel, which, compounded by mechanical defects in the car, caused it to pull to the right as he entered a curve in the roadway.

A defense expert testified to his belief that several engine mounts broke when the defendant's car traveled onto the shoulder of the road to avoid an oncoming car, which in turn caused the engine to lunge forward and the car to accelerate, sending it into a skid. This expert agreed that the engine mounts would not have broken had the defendant not "driven at that speed, with that car, on that road at that time."

The defendant was convicted on all ten indictments. He was sentenced only on the five indictments alleging negligent homicide due to the operation of an unsafe vehicle. During the sentencing hearing, the prosecution revealed that Letourneau, one of the key prosecution witnesses at trial, had been arrested and convicted of a DWI offense prior to the first trial. Because the defendant had previously requested discovery of such evidence, he filed a motion to dismiss or for a new trial. The motion was denied, and this appeal followed.

We will first address the defendant's contention that the set of indictments for negligent homicide predicated on the poor condition of the defendant's car, brought after the mistrial in 1985, violated the rule in *State v. Hastings*, 120 N.H. 454, 417 A.2d 7 (1980). Because the second set of indictments was not presented until twenty–six months after the defendant's arrest, he argues that the delay was

unreasonable and the indictments should have been dismissed. We disagree that our holding in *Hastings* is applicable.

In *Hastings*, this court adopted a rule requiring the State to indict defendants within sixty days of arrest. *State v. Hastings,* 120 N.H. at 455–56, 417 A.2d at 8. If an indictment is not presented within sixty days, the prosecution is required to show the reasonableness of the delay. *Id.* The purpose of the rule is to require the State to make a diligent, good faith effort to bring a defendant to trial once he is arrested. *Id.* at 455, 417 A.2d at 8. A violation of the rule may, therefore, result in the dismissal of pending charges. *See State v. Wellman,* 128 N.H. 340, 348–49, 513 A.2d 944, 950 (1986).

■ However, when a defendant is initially indicted in compliance with *Hastings* and is subsequently reindicted, we determine the appropriateness of the later indictment in light of the defendant's constitutional right to a speedy trial, rather than our court-created right to a speedy indictment. *See State v. Adams,* 133 N.H. 818, 823, 585 A.2d 853, 855 (1991). As we stated in *State v. Adams,* a challenged delay between original and subsequent indictments will be analyzed under speedy trial principles, in accordance with the approach articulated by the United States Court of Appeals for the First Circuit in *United States v. Colombo,* 852 F.2d 19, 23–24 (1st Cir. 1988). *Adams, supra* at 823–24, 585 A.2d at 855–56.

The defendant in the case before us does not dispute that the State complied with the *Hastings* mandate when he was initially indicted four days after his arrest, well within the sixty-day requirement. As far as the second set of indictments is concerned, however, because the defendant neither briefed nor argued a violation of his right to a speedy trial, he has waived that issue on appeal. *See Stewart v. Cunningham, Warden,* 131 N.H. 68, 71, 550 A.2d 96, 98 (1988) (issues raised in notice of appeal but not briefed are deemed waived).

We next consider the defendant's argument that the due process clause of the fourteenth amendment to the Federal Constitution and part I, article 15 of the New Hampshire Constitution require the prosecution to disclose, prior to trial, all exculpatory evidence, including evidence which could be used to impeach a prosecution witness. The defendant contends that the prosecution's failure to produce evidence of the arrest and DWI conviction of David Letourneau, a witness for the State, prevented the defendant from undermining the credibility of that witness at trial, thereby violating his due process rights. The defendant requests that the convictions be vacated and a new trial ordered.

Prior to the defendant's first trial, he requested the State to provide any exculpatory evidence or evidence favorable to the defendant, and all "'evidence affecting credibility . . .' reliability or motive of any witness for the prosecution . . .," and the witness's criminal record and probation status. A similar request was made prior to the second trial, and a motion for discovery was filed.

At his sentencing hearing following convictions on all ten indictments, the defendant learned that David Letourneau had been arrested and convicted of driving while intoxicated in 1985, seven months before the defendant's first trial and two years and seven months before the second trial. The defendant had not, however, received copies of Letourneau's arrest report, his motor vehicle record, or any other evidence relative to the DWI conviction.

■ Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87. "The rule of *Brady v. Maryland* . . . involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). A new trial is required when the prosecution suppresses evidence which was "material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985). The Brady requirement also applies to requested impeachment evidence that is material. *Id.* at 676. We note initially that the defendant, in his brief, incorrectly asserts that there is a different standard under the State Constitution than under the Federal Constitution for determining the materiality of *Brady* evidence. According to the defendant's brief, under part I, article 15, evidence is material if it can be found beyond a reasonable doubt that it would have affected the verdict, whereas for fifth and fourteenth amendment due process analysis, materiality is established "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'" (quoting *Bagley, supra* at 682). As explained below, the standards enunciated by the defendant were, in fact, both federal standards, one of which the defendant mistakenly attributed to the State Constitution, even though the State cases he cited were interpreting federal law. The two federal standards have, however, subsequently been replaced with a single materiality test.

■ Prior to 1985, the United States Supreme Court had developed two different standards for determining the materiality of

*Brady* evidence, depending on whether the defendant specifically requested the non-disclosed information. *Compare United States v. Agurs supra with Brady v. Maryland supra.* "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." *United States v. Agurs*, 427 U.S. at 106. When a defendant made a specific request for the production of information possessed by the prosecutor, and the government then failed to disclose that information, the defendant was entitled to a new trial if there was any reasonable likelihood that the evidence could have affected the outcome of the trial. *Id.* at 104. Where no request was made by the defendant, or if the request was not specific, in order to establish a due process violation, the defendant had to show that the undisclosed evidence created a reasonable doubt about guilt which would not otherwise exist. *Id.* at 112. The Court rejected the two-standard approach, however, in *United States v. Bagley*, 473 U.S. 667, in favor of one test for materiality to "cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused." *Id.* at 682. The test currently applied by the Court provides that "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

The defendant filed a post-trial motion to dismiss or for a new trial requesting relief under both the Federal and State Constitutions, but did not articulate the test to be applied to determine materiality. The trial court, in ruling against the defendant, applied the *Bagley* standard of materiality. The defendant did not allege that a different result was required by the State Constitution or object to the court's order on that ground.

On appeal, the defendant objects to the court's ruling and argues that the State Constitution gives the defendant greater protection than does the Federal Constitution. Because the defendant did not present his argument regarding a different standard under the State Constitution to the trial judge, we will not address it here. *See State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988). We note, however, that the defendant has cited no New Hampshire cases decided under our State Constitution that require, in a *Brady* analysis, application of a standard for materiality different from that enunciated by the trial judge.

The defendant sought production of "witness' [sic] criminal record and probation status" pursuant to Superior Court Rule 68, which entitled him to disclosure of witnesses' criminal records. Because Letourneau's DWI violation was part of his motor vehicle record, but not part of his criminal record, the State contends that it was not exculpatory evidence to which the defendant was entitled.

■■ A violation does not constitute a crime. RSA 625:9, II(b). "[T]he New Hampshire Criminal Code . . . [makes] every offense either a felony, a misdemeanor, or a violation. Felonies and misdemeanors are crimes. Violations are not." *State v. Doe*, 116 N.H. 646, 647, 365 A.2d 1044, 1045 (1976). Since a violation is not a crime, the State argues that the prosecution is not required to divulge a violation conviction as impeachment evidence. *See* N.H. R. Ev. 609; *State v. Pugliese*, 129 N.H. 442, 442, 529 A.2d 925, 926 (1987) (class of convictions used to attack witness's credibility generally limited to felonies and offenses involving dishonesty). Despite the above arguments, even if the State was under an obligation to furnish evidence of the DWI violation, an issue which we do not decide today, the defendant has failed to demonstrate that the evidence was material, which is the prerequisite to establishing a constitutional violation.

The defendant contends that Letourneau's credibility as a prosecution witness could have been undermined if the State had disclosed his DWI conviction. The defendant's main focus in this argument is on his conviction for negligent homicide caused by operating a vehicle while under the influence. The State's case included the testimony of Letourneau at both trials. Letourneau rendered an opinion at trial that the defendant was impaired at the time of the accident because he had consumed beer earlier in the day. This opinion was based on the fact that he had been told by a police officer that consumption of one beer means an individual is under the influence. Letourneau's opinion regarding impairment had already been undermined, however, by his testimony that the defendant was walking and talking appropriately.

In addition, the defendant argues that the DWI evidence would have undermined Letourneau's credibility because he was the State's only eyewitness to the amount of alcohol consumed by the defendant on the day of the accident. "[T]he omission must be evaluated in the context of the entire record," *Agurs*, 427 U.S. at 112–13, however, and there was ample evidence, from other sources, of the degree of impairment of the defendant from which it could be found, even without Letourneau's testimony, that the defendant would

likely have been convicted. An EMT, the ambulance attendant, a nurse, and a State trooper all observed the defendant's condition after the accident and testified that he was alcohol-impaired.

The defendant does not seriously argue that the verdict on the count for negligent homicide caused by operating an unsafe vehicle would have been affected by evidence of Letourneau's DWI charge. Letourneau did testify that he told the defendant of the bald tires when he sold him the car. Even if evidence of the DWI conviction somehow impeached Letourneau's credibility as to this testimony, in addition to extensive testimony regarding mechanical defects of the defendant's car given by both the defendant's and the prosecution's experts, there was other testimony indicating that the defendant knew of the car's unsafe condition, including testimony of the defendant's housemate who warned the defendant of the dangerous condition of the car, and testimony that the defendant himself admitted to the arresting officer that the tires on his car were bald and that he had planned to fix them.

█ Evaluating the significance of Letourneau's testimony as to the defendant's degree of impairment and the unsafe condition of his car, in the context of the full trial, there is no "reasonable probability" that the result of the defendant's trial would have been different if the evidence of Letourneau's conviction had been disclosed. *Bagley*, 473 U.S. at 682. The defendant has, therefore, failed to demonstrate the necessary materiality of that evidence. Accordingly, we affirm the convictions.

*Affirmed.*

HORTON, J., did not sit; the others concurred.