Merrimack
No. 93-459

THE STATE OF NEW HAMPSHIRE

v.

CARL LAURIE

January 20, 1995

*Jeffrey R. Howard*, attorney general (*John P. Kacavas*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.    The defendant, Carl Laurie, appeals the Superior Court's (*Manias*, J.) denial of his motion for a new trial, based on the prosecution's failure to disclose certain exculpatory evidence. We reverse and remand.

The defendant was convicted of the first degree murder of Lucien Fogg by a jury in the superior court in March 1990. We affirmed that conviction in *State v. Laurie*, 135 N.H. 438, 606 A.2d 1077, *cert. denied*, 113 S. Ct. 245 (1992).

In May 1991, the defendant first became aware of certain evidence that could have been used to impeach one of the State's witnesses at trial. The State possessed this evidence prior to trial. The evidence consists of the employment records of a Franklin Police Department detective, who played a major role in the investigation of the Fogg murder, and whose testimony at trial, the defendant contends, was crucial. The records reflect negatively on the detective's character and credibility. Upon review of this evidence, the defendant moved to set aside the previous verdict and for a new trial. This appeal followed the superior court's denial of that motion.

Although the defendant presents several arguments on appeal, we need address only one: that he was denied due process of law under the New Hampshire Constitution when the State knowingly withheld exculpatory evidence. In assessing this claim, we cite "decisions of the Supreme Court of the United States and of courts of other jurisdictions for their helpfulness in analyzing and deciding the State issue." *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985); *see State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983).

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This rule applies where no request for information was made and where a general request for exculpatory information was made. *United States v. Agurs*, 427 U.S. 97, 106–07, 110–13 (1976); *State v. Dery*, 134 N.H. 370, 376, 594 A.2d 149, 152–53 (1991).

The rule also applies to impeachment materials. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Dery*, 134 N.H. at 375, 594 A.2d at 152. "Such evidence is evidence favorable to an accused . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Bagley*, 473 U.S. at 676 (citation and quotation omitted). The application of the rule to impeachment evidence is justified by the fact that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prosecution's knowing use of false testimony to obtain

conviction violates due process, even if testimony is relevant only to witness's credibility).

■ The federal standard "does not demand that everything that might influence a jury be disclosed, or that there be permitted a complete discovery of all investigatory work or an examination of the State's complete file." *State v. Breest*, 118 N.H. 416, 419, 387 A.2d 643, 645 (1978) (citing *Moore v. Illinois*, 408 U.S. 786, 795 (1972)), *cert. denied*, 442 U.S. 931 (1979). Rather, *Brady* requires disclosure of evidence favorable to the accused only if it is material to guilt or to punishment. *Brady*, 373 U.S. at 87. Favorable evidence is material under the federal standard "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (Blackmun, J., joined by O'Connor, J.); *see id.* at 685 (White, J., concurring, joined by Burger, C.J., and Rehnquist, J.). Under the federal standard, the defendant has the burden of proving this "reasonable probability." *Id.* at 685 (White, J., concurring).

■ The policy behind this due process requirement is clear. The Court in *Bagley* noted that incomplete responses to discovery requests do more than deprive the defense of evidence; such responses also have "the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued." *Id.* at 682. The Court concluded that the reviewing court should assess whether confidence in the outcome has been undermined "in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Id.* at 683.

The defendant argues for a more protective standard for determining the materiality of *Brady* evidence under the State Constitution. In *Dery*, 134 N.H. at 375–76, 594 A.2d at 152, we noted that this court has not enunciated a different standard under the State Constitution than under the Federal Constitution for determining the materiality of *Brady* evidence. Because the question of a different standard was not properly preserved for appeal in that case, we declined to decide whether there is a different standard under the New Hampshire Constitution. *Id.* at 376, 594 A.2d at 153. The issue is properly before us in the instant case.

■ Although we have frequently treated New Hampshire and Federal constitutional protections similarly, "our citizens are entitled

to an independent interpretation of State constitutional guarantees." *Ball*, 124 N.H. at 231, 471 A.2d at 350. We have "the power to interpret the New Hampshire Constitution as more protective of individual rights than the parallel provisions of the United States Constitution." *Id*. at 231–32, 471 A.2d at 350; *see, e.g., State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978) (interpreting the State Constitution to afford greater protection than Federal Constitution against double jeopardy).

The State urges us to rely on *State v. Dukette*, 127 N.H. 540, 506 A.2d 699 (1986), to determine that the State standard is no more protective than the federal standard for materiality of *Brady* evidence. *Dukette*, however, involved a defendant's claim that, after his conviction was vacated by a federal habeas corpus proceeding, he was denied due process when he was tried a second time without evidence that was lost or destroyed by the prosecution between the first and second trials. *State v. Dukette*, 127 N.H. at 544, 506 A.2d at 703; *see Dukette v. Perrin*, 564 F. Supp. 1530 (D.N.H. 1983). We found "federal cases persuasive in deriving standards of materiality and prejudice that should govern post-conviction enforcement of a defendant's State due process right to produce all favorable proofs." *State v. Dukette*, 127 N.H. at 545, 506 A.2d at 704. We stated, however, that we would "observe the distinction between cases dealing with evidence that was withheld, but is still in the government's control, and cases dealing with evidence that was lost or destroyed." *Id*. at 544–45, 506 A.2d at 703–04.

■ In New Hampshire, criminal defendants have an explicit right "to produce all proofs that may be favorable to [them]." N.H. CONST. pt. I, art. 15. As a practical matter, the prosecutor decides which information must be disclosed to a defendant in compliance with constitutional mandates, and hence to decide which favorable proofs are available to the defendant. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Accordingly, we are convinced that the prosecutor must be responsible for defending that decision, once a criminal defendant has demonstrated that favorable, exculpatory information has been withheld.

■ "[E]ssential fairness, rather than the ability of counsel to ferret out concealed information, underlies the duty to disclose." *State v. Dukette*, 113 N.H. 472, 476, 309 A.2d 886, 889 (1973) (quotation omitted). To help in determining the appropriate burden of proof for this case, we examine the burdens this court has placed on parties in similar contexts. For example, when a defendant is able to demonstrate that the exclusion of evidence was error in the trial resulting in his or her conviction, we require the State to demonstrate that the error was harmless before we will sustain the conviction. *State v. Woodard*, 121 N.H. 970, 975, 437 A.2d 273, 276 (1981). We have also held that in

cases of prosecutorial overreaching and the erroneous admission of evidence, the State must prove beyond a reasonable doubt that the error did not affect the verdict. *See, e.g., State v. Skidmore*, 138 N.H. 201, 203, 636 A.2d 64, 66 (1993) (erroneous admission of evidence); *State v. Bujnowski*, 130 N.H. 1, 6, 532 A.2d 1385, 1388 (1987) (prosecutorial overreaching).

■ We find the application of the federal standard, pursuant to which a defendant must demonstrate "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *Bagley*, 473 U.S. at 682, to impose too severe a burden on defendants. We hold that the New Hampshire constitutional right to present all favorable proofs affords greater protection to a criminal defendant. Upon a showing by the defendant that favorable, exculpatory evidence has been knowingly withheld by the prosecution, the burden shifts to the State to prove beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict. This standard does not require that the prosecutor disclose everything that might influence a jury, or that the defendant be permitted a complete discovery of all investigatory work or an examination of the State's complete file. *See Breest*, 118 N.H. at 419, 387 A.2d at 645.

The favorable, exculpatory evidence upon which the defendant bases his claim for a new trial consists of a 1986 pre-employment investigation file regarding Franklin Police Department Detective-Sergeant Steven Laro, prepared in connection with Laro's application for employment with the New Hampshire State Police, and Laro's personnel file at the Franklin Police Department. The files, as described by the defendant, disclose numerous instances of conduct that reflect negatively on Laro's character and credibility.

For example, the State Police file contains State Trooper Bruce Matthews' report regarding Laro's suitability as a trooper trainee. In it, Matthews noted that he spoke with Deputy Chief Russell of the Boxford Police Department in Massachusetts, where Laro previously had been employed. Russell described Laro's employment as "controversial," and stated that Laro had amassed a personnel file more than three inches thick, consisting primarily of letters of complaint. Russell noted that "[i]t was evident that Laro was an extremely volatile person. The letters, often [seven] or [eight] pages in length, stated [that] Laro would come on strong, often verbally abusive, and if questioned about his demeanor, [he] would manhandle the subject, often choking the person or threatening him with physical harm."

Russell further indicated that on two occasions Laro had been suspended from the Boxford department. The first suspension was for

neglect of duty, and the second was for an incident which occurred while Laro was not on duty, in which he threatened a civilian with a weapon. According to Russell, "Laro was also asked to submit to polygraph examinations concerning other incidents. In all cases, it was determined that he was not being truthful and this, in turn, resulted in court cases being tainted." Russell also noted that the Boxford Police Department had sent Laro to a psychologist, who concluded that "Laro should not be entrusted with a gun and badge and that he should be referred to counselling."

When Trooper Matthews interviewed Laro regarding the State Police position, Laro described his Boxford personnel file as "full of commendations with few, if any, complaints," and stated that he was never disciplined. A review of Laro's training and commendations listed in his application disclosed that the commendations originated from the American Police Hall of Fame, the only requirements for which were a police department position and a ten dollar fee. Laro also represented that he had been selected to attend schools sponsored by elite military organizations, which he could not substantiate upon questioning, stating that "the Army must have lost the records of his having attended these schools." In addition, there were two reports from fellow officers of incidents of inappropriate use of firearms and reports from former co-workers of Laro, describing him as a "liar" and "not to be trusted."

Detective Laro's personnel file at the Franklin Police Department revealed further, similar information, some of it regarding Laro's performance in Franklin, and some in Boxford, Massachusetts. The file contains reports of incidents of misrepresentation and inappropriate use of firearms. In response to Laro's claim on his application with the Boxford department that he had attended a four week Alcohol Enforcement Program at the Puerto Rico Police Academy, there was a letter from its associate dean stating that no Steven Laro had attended such a course.

The Franklin Police file also included information regarding an investigation conducted by Laro into the Franklin Family Planning Clinic in 1990. The file indicated that Laro had telephoned the clinic and demanded records for one of its clients, threatening the arrest of personnel and the closing of the clinic if there was no compliance. Claiming that his actions were authorized by the chief of police and the county attorney, he indicated that the clinic was named in a "Class A felony suit," that anyone with a medical license would have it revoked, and that "the [attorney general was] hopping mad about this."

This evidence plainly would have been useful to the defendant upon cross-examination of Laro. The State concedes that the evidence is favorable to the accused. In fact, the file indicates that Franklin Police

Chief Douglas Boyd received a telephone call in March 1991 from William Lyons, of the office of the attorney general, who stated, "If you had a homicide tonight in Franklin, I would instruct you that Sgt. Laro not be involved in the case in any capacity."

To determine whether the failure to disclose the evidence requires reversal, we must review the evidence in light of the role Laro's testimony played in the trial, and in light of the relationshp of the evidence to the defendant's trial strategy. *See Agurs,* 427 U.S. at 113–14. The absent evidence "must be evaluated in the context of the entire record." *Id.* at 112. In this inquiry, the fact that other evidence might be sufficient to find the defendant guilty is not dispositive. *State v. Elwell,* 132 N.H. 599, 607, 567 A.2d 1002, 1007 (1989). We must keep in mind that an incomplete or incorrect response to a *Brady* request may preclude a competent defense attorney from pursuing a strategy that potentially would have been effective. In addition, we must keep in mind "the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled" by the prosecutor's failure to disclose the evidence. *Bagley,* 473 U.S. at 683. We need not determine the admissibility of the material. It is sufficient for us to find that the evidence is material to "the preparation *or* presentation of the defendant's case." *Id.* (emphasis added). The evidence is material unless the State demonstrates beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict.

By his own account, and that of Chief Boyd, Laro was "in charge" of the Franklin police investigation into the disappearance and murder of Lucien Fogg. Laro maintained and updated the "master file" on the case, which contains reports from investigating officers as they discover and collect evidence. Laro was the State's primary witness who testified to the condition of Fogg's residence when the investigation began. Laro was the affiant for a number of search warrants, and, by his own testimony, "all the paperwork was funneled through" him.

In addition, Laro testified that the defendant made a spontaneous confession while in custody. Only Laro was present when the defendant allegedly stated, "I'm sorry it happened. I didn't mean to hurt Luci[e]n." Although the defendant confessed to other officers when under interrogation and this court has upheld the voluntariness of those confessions, *see Laurie,* 135 N.H. at 446, 606 A.2d at 1081–82, the Laro confession was the only one not made while under interrogation or to an interrogating officer.

Counsel for the defendant vigorously cross-examined Laro, and other State witnesses, regarding substantive aspects of the case. For example, questions were raised about the decision early in the investigation not to pursue another possible suspect in the crime.

Because no evidence was made available on the issue, however, the defendant made no direct challenge to Laro's credibility.

Laro's testimony went directly to the issue of the defendant's guilt when he testified to the alleged spontaneous confession. In addition, a major element of the defense strategy at trial was to discredit the behavior of the police. The withheld evidence regarding Laro's employment history would have played a role in that strategy. After considering the nature of the evidence in light of the entire record, we cannot conclude, beyond a reasonable doubt, that the undisclosed evidence would not have affected the verdict.

■ The prosecution's failure to disclose the evidence violated the New Hampshire constitutional right to present all favorable proofs. Because the defendant was denied this constitutional right at his first trial, we reverse the superior court's denial of his motion for a new trial and remand the matter to the superior court for a new trial.

*Reversed and remanded.*

THAYER, J., dissented; the others concurred.