Public Employee Labor Relations Board
No. 2005-436

APPEAL OF THE TOWN OF PELHAM
(New Hampshire Public Employee Labor Relations Board)

Argued: May 11, 2006
Opinion Issued: August 23, 2006

*Devine, Millimet & Branch, P.A.*, of Manchester (*Mark T. Broth* and *Jennifer M.N. Koon* on the brief, and *Mr. Broth* orally), for the appellant.

*AFSCME Council, Local 3657*, of Boston, Massachusetts (*Erin L. Goodwin* and *Jennifer Springer* on the brief, and *Ms. Goodwin* orally), for the appellee.

*Bernstein, Shur, Sawyer & Nelson, P.A.*, of Manchester (*Dawnangela Minton* and *Andru Volinsky* on the brief) for the New Hampshire Association of Chiefs of Police, as *amicus curiae*.

DALIANIS, J. The appellant, Town of Pelham (town), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB), in which the PELRB ordered the town to comply with an

arbitrator's award mandating the reinstatement of an employee represented by the appellee, The American Federation of State, County and Municipal Employees Council 93, AFL-CIO, Local 3657, Pelham Police Employees (the union). We affirm.

The record supports the following facts. The town is a public employer within the meaning of RSA 273-A:1, X (Supp. 2005). The union is the exclusive bargaining representative for certain members of the Pelham Police Department (PPD), including dispatchers. The town and the union were signatories to a collective bargaining agreement (CBA) that governed the terms and conditions of their relationship, including a workable grievance procedure as required by RSA 273-A:4 (Supp. 2005). The CBA included several progressive levels of disciplinary action, ranging from a verbal warning to termination, though it provides that the sequence "need not be followed if an infraction is sufficiently severe to merit immediate suspension or discharge." The CBA contained no language mandating discipline, such as termination, for any particular form of misconduct.

The town employed Debra Desmarais as a PPD dispatcher from June 1998 until June 2002, when her employment was terminated. As a dispatcher, her normal responsibilities included: answering and initiating telephone calls; receiving members of the public at the PPD; watching video monitors, including those that monitored the lock-up area; recording walk-in 911 reports; and performing computer research regarding criminal records. Desmarais was not a sworn officer; she did, however, wear a uniform shirt with the PPD logo on it. Though dispatchers such as Desmarais are, at times, required to testify and author written reports in criminal matters, it is improbable that a dispatcher's report of an event will rise to the level of essential testimony for a prosecution.

In September 2001, the PPD began investigating allegations that Desmarais had, on numerous occasions, solicited and accepted a "police discount" at a local McDonald's restaurant. The investigation included interviews with Desmarais and employees of the McDonald's where she allegedly demanded the discounts. Though Desmarais acknowledged receiving discounts "three to four times," she claimed that she had requested a discount only once. Various restaurant employees, however, claimed that she had solicited discounts on ten to thirty separate occasions. As a result of the investigation, Desmarais, who had been on administrative leave from September 24, 2001, to March 14, 2002, received a five-day suspension in April 2002 for violating departmental rules regarding solicitation of discounts or gratuities.

Because of the discrepancies between the testimony of Desmarais and that of the restaurant employees, the town initiated a separate

investigation into whether Desmarais had been truthful during the original investigation. The town re-interviewed Desmarais and the employees, and found the same testimonial disparities regarding the number of times Desmarais had solicited and received discounts. Following the second investigation, the town concluded that Desmarais had violated the PPD's "General Rules of Conduct," which require that "[o]n any official matter whatsoever, employees shall not knowingly make any false statements or misrepresentations of the facts, nor withhold information that would assist in resolving the matter." Finding this to be just cause, the town notified Desmarais that she would be terminated from her employment as a dispatcher effective June 10, 2002.

[1] As a result of the termination, the union proceeded to arbitration pursuant to the CBA. The town, without objection, voluntarily participated in the arbitration with the understanding that it would yield a final and binding award. A one-day arbitration was conducted on November 5, 2003, and the arbitrator rendered a decision on February 6, 2004. An arbitrator has the authority, in the context of a just cause grievance, to consider the underlying issues and surrounding circumstances necessary to interpret and apply the express provisions of the CBA and reach a final decision. *Appeal of City of Manchester*, 153 N.H. 289, 293 (2006). The arbitrator considered, among other things, the testimony of witnesses, the PPD's rule prohibiting false statements in connection with official matters, and our holding in *State v. Laurie*, 139 N.H. 325 (1995). Though the arbitrator found that Desmarais deliberately misrepresented the number of times she requested and received discounts at McDonald's, he concluded that termination was too harsh a penalty. Accordingly, while he did not order back pay or other contract benefits for the unemployment period beginning June 10, 2002, he did award reinstatement. The union thereafter requested, in a letter dated February 17, 2004, that the town comply with the award and reinstate Desmarais.

Rather than reinstate Desmarais, the town filed an improper practice charge with the PELRB, alleging that the union committed an unfair labor practice by demanding Desmarais' reinstatement. Specifically, the town asserted that the arbitrator's award was violative of public policy, as it required the reinstatement of "an individual proven to have been untruthful in her official duties and in her sworn testimony." The PELRB conducted an evidentiary hearing in the matter on September 23, 2004, and on March 16, 2005, issued a decision denying the town's complaint against the union and finding, instead, that the town committed an unfair labor practice by refusing to implement the arbitrator's award. The PELRB ordered the town to immediately reinstate Desmarais as a police

dispatcher. The town subsequently filed a motion for reconsideration, which the PELRB denied.

■ On appeal, the town argues that the PELRB erred by "ignor[ing] the well-defined and dominant public policy against reinstating untruthful police department employees" and by applying an incorrect standard of review. "When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of Nashua Police Comm'n*, 149 N.H. 688, 689 (2003); *see also* RSA 541:13 (1997). Though the PELRB's findings of fact are presumptively lawful and reasonable, we require that the record support the PELRB's determinations. *Appeal of City of Laconia*, 150 N.H. 91, 93 (2003).

■ We first address the town's assertion that the PELRB erred as a matter of law by issuing a decision in contravention of public policy. To so find, we must conclude that the PELRB's order contravenes a "strong and dominant public policy as expressed in controlling statutes, regulations, common law, and other applicable authority." *Appeal of Amalgamated Transit Union*, 144 N.H. 325, 327 (1999). Thus, in such cases our review is limited to the confines of positive law, rather than general considerations of supposed public interests. *Cf. Harper v. Healthsource New Hampshire*, 140 N.H. 770, 775 (1996) (court may refuse to enforce contract that contravenes public policy of statutory or nonstatutory origin).

The town argues that there is a "strong and dominant public policy" against the reinstatement of police department employees who are found to be untruthful and who may, however unlikely the possibility, be required to testify in future criminal matters. It finds support for its position in *Laurie*, a criminal case in which we ordered a new trial for a defendant convicted of first-degree murder after concluding that the State had failed to disclose evidence favorable to the defense. *Laurie*, 139 N.H. at 329-33. In *Laurie*, the State knowingly withheld pre-employment and personnel files detailing numerous instances of conduct that reflected negatively upon the character and credibility of a Franklin Police Department detective who was a key prosecution witness. *Id.* at 330-32. Finding that the detective's testimony "went directly to the issue of the defendant's guilt," and noting that the undisclosed evidence could have been used to impeach that testimony, we held that the defendant was denied due process of law and remanded the matter to the superior court for a new trial. *Id.* at 333.

To buttress its assertion that *Laurie* gave rise to a "strong and dominant public policy" justifying the reversal of the PELRB's decision,

the town proffers two arbitration awards that cite *Laurie* as support for the just cause termination of police officers in New Hampshire. In *International Brotherhood of Police Officers and Town of Derry*, AAA No. 11 390 00173 98 (Oct. 26, 1998), the arbitrator noted that, in light of *Laurie*, an incident of untruthfulness in an officer's permanent record "may have an impact if he were called as a witness in a criminal case." *Id.* at 10. The arbitrator concluded that he had no authority to require the Town of Derry to "retain a police officer who has potentially jeopardized prosecution of criminal defendants." *Id.* at 11. In *Dover Police Association I.B.P.O., Local 466 and City of Dover, New Hampshire*, AAA No. 11 390 00871 95 (Dec. 21, 1995), the arbitrator noted that "[j]udges, juries, . . . and the public invest in [police officers] a confidence and trust that is central to the proper functioning of our democracy. The *Laurie* case evidences the importance that the New Hampshire Supreme Court places on this fact." The town contends that "[t]his well defined and dominant public policy derived from *Laurie*" is easily extended to encompass police dispatchers, who may also be called as witnesses in criminal prosecutions for a variety of reasons.

In the context of a labor grievance, an arbitrator is free to consider general notions of the public interest when determining whether just cause for termination exists. The PELRB, however, as an administrative agency acting in a "quasi-judicial capacity," is granted only limited and special subject matter jurisdiction when reviewing such arbitral determinations. *See Appeal of Amalgamated Transit Union*, 144 N.H. at 327. Thus, the PELRB is limited to applying only "strong and dominant public policy as expressed in controlling statutes, regulations, common law, and other applicable authority, to address matters necessary to resolve questions arising within the scope of their jurisdiction." *Id.* at 327-28. Though the PELRB may refuse to enforce a CBA term that contravenes public policy, it may only do so within the confines of its limited jurisdiction. *Id.* at 328.

Therefore, when reviewing a decision of the PELRB, we cannot look to an arbitrator's award in a labor grievance as an expression of public policy. To conclude that the PELRB erred by enforcing an arbitration decision that violates a strong and dominant public policy, we must first conclude that such a policy is "expressed in controlling statutes, regulations, common law, and other applicable authority." *Id.* at 327-28. Because an arbitrator's award has no precedential effect upon this court, such an award does not fall within any of these categories.

More importantly, we disagree with the town's assertion that *Laurie* expresses a strong and dominant public policy against the reinstatement of civilian police department employees who are found to be untruthful and

who might possibly be required to testify in future criminal matters. In *Laurie*, we addressed only a defendant's right under the State Constitution to receive exculpatory evidence from the State. *Laurie*, 139 N.H. at 327. The fact that the potentially impeachable witness in *Laurie* was a police officer was not dispositive of our decision, and we did not address the issue of terminating the employment of police officers who are known to be untrustworthy. While *Laurie*, as a practical matter, may influence a police department's internal hiring and disciplinary policies, it does not express a strong and dominant public policy to the extent posited by the town.

We do not mean to suggest that the town's assertion of a "public policy" against the reinstatement of police department employees who, as a result of certain misconduct, are deemed to be untrustworthy is, on an intuitive level, incorrect. However, as discussed above, we are compelled to look for strong, dominant public policy only within the confines of positive law, including common law. *See Appeal of Amalgamated Transit Union*, 144 N.H. at 327; *cf. Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (explicit, well-defined, and dominant public policy barring enforcement of CBA must be ascertained "by reference to laws and legal precedents, and not from general considerations of supposed public interests"). Because we find that no such public policy exists, we hold that the PELRB did not err as a matter of law by ordering the town to comply with the arbitrator's award.

The town next argues that the PELRB ignored the standard of review for arbitration awards as set forth in *Appeal of Amalgamated Transit Union*, 144 N.H. at 327, and instead "looked to federal labor law and derived a new standard of review." Specifically, the town asserts that the PELRB improperly relied upon *Eastern Associated Coal Corp.*, 531 U.S. at 62, in concluding that the "public policy exception" is limited to instances where an arbitration award violates positive law. Having reviewed the record before us, we find the town's argument to be without merit. In its order, the PELRB plainly identifies *Appeal of Amalgamated Transit Union* as setting forth the pertinent standard of review, and dutifully applies that standard in reaching its conclusion.

*Affirmed.*

DUGGAN, GALWAY and HICKS, JJ., concurred.