**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0641, <u>State of New Hampshire v. Dana Avery</u>, the court on October 21, 2020, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Dana Avery, appeals his convictions on two felony counts of using computer services for a prohibited purpose. <u>See</u> RSA 649-B:4, I (2016). On appeal, he argues that the Superior Court (<u>Colburn</u>, J.) erred by denying his motions to dismiss the charges for due process and speedy trial violations and by denying his motion for a directed verdict. We affirm.

I. Motions to Dismiss

The following facts are relevant to our review. The defendant was first arrested for the charged conduct on July 21, 2017, and was indicted by the grand jury on September 19. The original indictments alleged that, between July 11 and 21, the defendant "knowingly used Craigslist, a computer online service, in an attempt to solicit a person he believed to be a child to meet him" so that they could engage in certain sexual activity.

The court held a dispositional conference on January 3, 2018, at which it scheduled the final pre-trial conference for April 27 and jury selection for May 7. In March, the defendant's original attorney withdrew from the case after the defendant retained his current attorney. The defendant's current attorney entered an appearance on April 13 and filed a motion for a continuance. The trial court granted the motion, but required the defendant to submit a waiver of his speedy trial rights. The defendant did so on April 27. Thereafter, the court held another dispositional conference on May 24, and rescheduled the final pre-trial conference for October 18 and jury selection for October 29.

Six days before jury selection, the State entered a <u>nolle</u> <u>prosequi</u> on the original indictments. On the indictments, the prosecutor wrote that <u>nolle</u> <u>prosequi</u> was entered "due to defective indictment." The State brought two new indictments on November 20, and jury selection was rescheduled for June 17, 2019. The new indictments alleged that the defendant "knowingly used Yahoo email service in an attempt to solicit 'lizzynh13,' a person he believed to be a child under the age of 16, to commit sexual penetration" as defined by RSA chapter 632-A.

On April 15, 2019, the defendant moved to dismiss the new indictments, arguing that the delay in bringing him to trial violated his speedy trial and due process rights. On June 13, the trial court denied the defendant's motion without prejudice to his renewal of the motion following trial, if he was convicted. The defendant's jury trial took place on June 26 and 27, after which the jury convicted him of both charges. The defendant subsequently renewed his motion to dismiss.

The trial court denied the renewed motion. The court found that the delay between the defendant's July 21, 2017 arrest and June 17, 2019 jury selection was presumptively prejudicial. Having found the delay to be presumptively prejudicial, the court then examined the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. After considering all of the relevant factors, the court concluded that the defendant was not denied his right to a speedy trial. In addition, the trial court found that the defendant's due process claim lacked merit because he had "failed to articulate any actual prejudice" from the delay in prosecution in the case. This appeal followed.

We first consider whether the trial court erred by denying the defendant's motions on speedy trial grounds. We address his arguments under the State Constitution, and cite federal opinions for guidance only. State v. Ball, 124 N.H. 226, 231-33 (1983). We defer to the trial court's factual findings unless those findings are clearly erroneous, and consider de novo the court's conclusions of law with respect to those factual findings. State v. Allen, 150 N.H. 290, 292 (2003).

To determine whether a defendant's right to a speedy trial has been violated under the State Constitution, we apply Barker v. Wingo, 407 U.S. 514, 530 (1972), which requires that we balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant. State v. Brooks, 162 N.H. 570, 581 (2011). The length of the delay must be presumptively prejudicial to trigger consideration of the other factors. Id.; see State v. Allen, 150 N.H. 290, 294 (2003) (stating that when defendant is charged with misdemeanor and not jailed, pre-trial delay of six months is presumptively prejudicial).

The threshold inquiry in the speedy trial analysis is the length of the period of delay. Brooks, 162 N.H. at 581. Here, the parties agree and the trial court found that the delay in this case was presumptively prejudicial. The defendant contends that because the delay was presumptively prejudicial, the trial court erred by denying his first motion to dismiss without prejudice without considering the remaining Barker factors. We conclude that the trial court did not err in this respect. "[M]ost speedy trial claims . . . are best considered only after the relevant facts have been developed at trial." United

2

States v. MacDonald, 435 U.S. 850, 858 (1978). This is particularly so when, as in the defendant's first motion to dismiss, the defendant has not articulated any specific prejudice from the delay in bringing him to trial. See id.

The second Barker factor requires that we assess why the delay occurred, which party is responsible for it, and how much weight to give the delay. The defendant does not challenge the trial court's finding that 14 months of the delay between his arrest and the jury selection is not attributable to the State (eight months is not attributable to either side and six months is attributable to the defendant's decision to seek new counsel and move for a continuance).

The trial court also found that the 28-day delay between the State's entry of nolle prosequi on the first set of indictments and the defendant's re-indictment was not counted for the purposes of the second Barker factor. The trial court determined that, although some of the delay between the defendant's re-indictment in November 2018 and the jury selection in June 2019 was attributable to the State's decision not to prosecute the original indictments, most of it was attributable "to the typical scheduling practice of the court system." In light of that finding and because the court did not find that the State acted in bad faith, the court did not weigh the delay between the defendant's re-indictment and the jury selection heavily against the State.

The defendant does not challenge the trial court's finding that most of the delay between his re-indictment and the jury selection was attributable to the court system. Rather, he asserts, in effect, that the record compels a finding that the State acted in bad faith and, therefore, that the delay should have weighed heavily against the State. We disagree.

The power to enter a nolle prosequi exists in the prosecuting officer; the court has no right to interfere in its exercise. Allen, 150 N.H. at 293. "The State's discretion, however, is not unlimited, for the trial courts are empowered to curb that discretion where it is used to inflict confusion, harassment, or other unfair prejudice upon a defendant." Id. In the absence of bad faith on the part of the State in entering nolle prosequi, we have held that the period of time between the entry of nolle prosequi and the institution of new criminal charges is excluded when calculating the length of the delay. Id.

Here, the trial court credited the State's assertion that the original indictments were defective in that they would not match the available proof at trial. Such a defect is a permissible reason for entering a nolle prosequi. Id. ("The State may enter a nolle prosequi for various reasons, and we have found it permissible to nolle pross a case where the evidence will not sustain the charge as alleged."). The trial court specifically found no evidence that the State entered the nolle prosequi so as to gain an improper tactical advantage over the defendant or to harass him or inflict confusion. Under these

3

circumstances, the trial court's finding that the State did not act in bad faith was not clearly erroneous, and we reject the defendant's argument that the record compelled a contrary finding. Accordingly, we find no error in the trial court's decision not to include the 28 days between the entry of nolle prosequi on the original indictments and the defendant's re-indictment in its analysis. See id.

Nor do we find any error in the trial court's decision to weigh the delay between the defendant's re-indictment and the jury selection only slightly against the State. The defendant does not dispute that most of that delay is attributable to the court and, as previously discussed, the record supports the trial court's finding that the State did not act in bad faith.

We put substantial emphasis on the final two Barker factors. Brooks, 162 N.H. at 582. The third factor — the strength of the defendant's assertion to his right to a speedy trial — "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. (quotation omitted). The trial court found that while the original indictments were pending, the defendant "never raised his speedy trial rights," and, indeed, "explicitly waived his right to a speedy trial" when his current counsel moved for a continuance. The court determined that, although the new indictments were brought in November 2018, the defendant did not raise his right to a speedy trial until April 2019. Before April 2019, the defendant did not request an expedited trial or "even mention[] his right to speedy trial." The defendant does not challenge these findings on appeal.

The final Barker factor "requires us to determine whether and to what extent the defendant suffered prejudice, including whether the delay resulted in an oppressive pretrial incarceration, anxiety, or an impaired defense." Brooks, 162 N.H. at 583. The trial court found that the defendant failed to articulate any actual prejudice from the delay. "He has not claimed that any witnesses were unavailable as a result of the delay, that any memories had faded, or that any evidence was lost." Rather, the defendant claimed only that the delay had caused him "to live his life in a state of uncertainty." The court found that the defendant's understandable anxiety "only factors minimally in the prejudice analysis, particularly where [he] remained free on bail while both sets of indictments were pending," and "he was brought to trial within two years of his arrest."

The defendant appears to argue that, because the State acted in bad faith, he need not show actual prejudice. Cf. State v. Locke, 149 N.H. 1, 8 (2002) ("[W]hen a defendant does not — or cannot — articulate the particular harm caused by delay, we inquire whether the length and reason for the delay weigh so heavily in the defendant's favor that prejudice need not be specifically demonstrated." (quotation omitted.) Given that the trial court did not find that

4

the State acted in bad faith and that we have upheld that finding, we reject the defendant's apparent argument.

Upon this record, after balancing the requisite factors, we conclude that the defendant was not denied his right to a speedy trial. See Brooks, 162 N.H. at 581. Because the Federal Constitution is no more protective of the defendant's rights than the State Constitution under these circumstances, see id. at 584, we reach the same conclusion under the Federal Constitution.

We next consider whether the trial court erred by denying the defendant's motion to dismiss on due process grounds. We construe the defendant's appellate argument to be that the State's decision to enter nolle prosequi on the first set of indictments and to re-indict him 28 days later amounted to a fundamentally unfair adjudicatory procedure in violation of his state and federal rights to due process. See State v. Adams, 133 N.H. 818, 824 (1991). To prevail on such a claim, the defendant had to demonstrate that the State's actions resulted in actual prejudice. See id. To the extent that the defendant suggests that it was enough for him to establish that the State engaged in an "unfair adjudicatory procedure" without having to show prejudice, he is incorrect. See State v. Goodale, 144 N.H. 224, 229-30 (1999) (affirming the defendant's conviction, despite finding that he had been subjected to an unfair adjudicatory procedure, because he failed to demonstrate that he was prejudiced by the procedure).

Even if we were to assume without deciding that the State's actions in entering nolle prosequi and re-indicting the defendant constituted an "adjudicatory procedure," the defendant has not established actual prejudice to his defense. The defendant has made no showing of actual prejudice, and, thus, the trial court did not err by denying his motion to dismiss on due process grounds. As the Federal Due Process Clause offers the defendant no greater protection than does Part I, Article 15 of the State Constitution under these circumstances, see United States v. Marion, 404 U.S. 307, 325-26 (1971); Adams, 133 N.H. at 824, we reach the same result under both constitutions.

To the extent the defendant argues that the delay between the State's entry of nolle prosequi and his subsequent re-indictment violated his due process rights, that argument is insufficiently developed in light of our precedent, which establishes that "a challenged delay between original and subsequent indictments will be analyzed under speedy trial principles." State v. Dery, 134 N.H. 370, 374 (1993).

II. Motion for a Directed Verdict

The defendant argues that the evidence at trial was insufficient to support his conviction. Because a challenge to the sufficiency of the evidence

raises a claim of legal error, our standard of review is <u>de</u> <u>novo</u>.  <u>State v. Labrie</u>, 171 N.H. 475, 482 (2018).  In reviewing a sufficiency of the evidence claim, we view the evidence presented at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the State, and uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt.  <u>Id</u>.  In doing so, we examine each evidentiary item in the context of all the evidence, not in isolation.  <u>Id</u>.  The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt.  <u>Id</u>.

In this case, to obtain a conviction, the State had to prove, beyond a reasonable doubt, among other elements, that the defendant believed that the person with whom he communicated was a child.  RSA 649-B:4, I; RSA 632-A:4, I (2016), :2, I (Supp. 2019).  Under the statute, a child is "any person under the age of 16 years."  RSA 649-B:2 (2016).

The defendant argues that the evidence was insufficient to prove that he believed the person with whom he communicated, "Lizzy," was under the age of 16.  We disagree.

The defendant exchanged more than 1,000 email messages with "Lizzy" between July 11, 2017, and July 20, 2017.  In the first email exchange on July 11, 2017, the defendant told "Lizzy" that, in his Craigslist listing, he was looking for a person who was "[c]lose to being legal."  "Lizzy" responded that she was "a little younger, 14," to which the defendant answered, "Want a friend?  I would spoil you silly.  Want a mentor?  XO."  He told "Lizzy" that he wanted to "[m]entor [her] to be a great person (for [him])," and said that she "would need to like older guys."  In another email exchange on the same day, the defendant said, "If you were 18, I would marry you!"  "Lizzy" responded, "Yeah.  Sucks that I'm only 14.  The boys in my grade are so immature."  Later that day, the defendant sent an email saying, "If I make love to you, I could go to jail for 30 years."  Another email message from the defendant said, "The law sees it different . . . I will marry you when you turn 18."

The next day, July 12, "Lizzy" again told the defendant that she was "only 14," and asked him whether she was "too young" for him.  The defendant responded, "I want to eventually marry you and spoil you. . . . so will you be MY little girl ? Daddy / Daughter relationship . . . until you are 18 and I can marry you!"  Later that day, "Lizzy" again told the defendant that she was "only 14" and lacked experience in the sexual activities he was suggesting.  The defendant told "Lizzy" that she needed to "keep this a secret forever," even after they married because, otherwise, he would "go to jail for 30 years."

The following day, "Lizzy" told the defendant that because she was "only 14," she did not have any tattoos.  The defendant responded, "good girl . . . I want to keep you pure forever . . . ALL MINE!!!!!!!"  The defendant told "Lizzy" that when they married "in a few years," her mother "might find out" about

6

their email exchanges, and that, "as long as she does not call the police," he would be "fine." In another email that day, the defendant told "Lizzy" that it was "not illegal for [them] to talk," but that he could "not take [her] out of State or touch [her]" because "that would be illegal." He told "Lizzy" that as long as she could "keep a secret," they could continue to send email messages, and that she had to marry him when she graduated high school. The defendant said that he "want[ed] to watch [her] go from a little girl to a beautiful lady."

On July 20, "Lizzy" and the defendant exchanged email messages about meeting in person. The defendant told "Lizzy" that her "mom will call the police if she ever found out." The defendant said, "I just read that a NH state rep was caught with a 14 year old and is in trouble looking at a 20 year sentence for sex with a minor." He told "Lizzy" that "after reading about the NH state rep," he "[got] nervous," because of his career and his father.

In response to the defendant's question about whether she looked old or young for her age, "Lizzy" responded that she looked like she is 14. She told the defendant, "no im deff 14," to which he responded, "I just [do] not want to appear pushy or a filthy old man." The defendant told "Lizzy" that she had to be 18 before they could marry, to which Lizzy responded, "well we have like 4 years until then."

Later that evening, the defendant emailed "Lizzy," "I've been reading nh law. I am already bad by just emailing ( is that crazy or what? ), we will have breakfast and meet . . . go from there. I wish you were 18." When "Lizzy" said, "its whatever you want. I guess im not what you were looking for. that's ok.," the defendant said, "that is not it at all. I DO WANT YOU ! it is the age thing . . . honestly I am scared as hell I will go to jail . . . ." In one of their last email exchanges, the defendant told "Lizzy," "think if you were in my shoes . . . now you are 48 and I am 14."

In these messages, "Lizzy" repeatedly told the defendant that she was "only 14"; the defendant repeatedly acknowledged that "Lizzy" was 14 and that he could not marry her for another four years when she turned 18; and the defendant also repeatedly acknowledged that, because "Lizzy" was not of age, it was illegal for him to touch her or to take her over State lines and that if anyone discovered their email correspondence, he could face jail time.

The defendant argues that evidence of his statements to the police when he was interviewed, the testimony of the interviewing detective about the defendant's responses to his questions, and the fact that one must be at least 18 years old to use Craigslist were sufficient create a reasonable doubt as to whether he believed "Lizzy" was younger than 16. However, when, as in this case, "the proof involves both direct and circumstantial evidence, a sufficiency challenge must fail if the evidence, including the jury's credibility determinations, is such that a rational trier of fact could find guilt beyond a

7

reasonable doubt, even if the evidence would support a rational conclusion other than guilt if the jury had resolved credibility issues differently." State v. Saunders, 164 N.H. 342, 351 (2012). Viewing all of the evidence and its reasonable inferences in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the defendant believed "Lizzy" to be younger than 16 years of age.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**